Clyde W. SHARPLESS, Jr. and
Southwestern Carriers,
Inc., Appellants,

v.

Dong K. SIM, Individually and on Behalf of the Estates of Mun Sik Sim, Deceased and Chong Sim, Deceased, and Hyon Suk Kim and Thomas Sim, Appellees.

No. 05–05–00915–CV.

Court of Appeals of Texas,
Dallas.

Nov. 30, 2006.

Rehearing Overruled Jan. 9, 2007.

Thomas C. Barron, The Law Offices of Thomas C. Barron, P.C., Dallas, for Appellants.

Andrew B. Sommerman, Sarah Romero, Sommerman & Quesda, L.L.P., Dallas, for Appellees.

Before Justices MORRIS, WHITTINGTON, and RICHTER.

## OPINION

Opinion by Justice RICHTER.

In two issues, Sharpless and Southwestern Carriers appeal the trial court's denial of a motion for new trial and ruling under the Federal Motor Carrier Safety Regulations, promulgated pursuant to the Interstate Common Carrier Act. We affirm the trial court's judgment.

### Factual and Procedural Background.

This case arises out of a double fatality accident which occurred when a truck driven by Sharpless snagged a communication cable, causing a telephone pole to crush the vehicle occupied by appellee Dong K. Sim and her family. Sim, individually, and on behalf of the family of the deceased, sued Sharpless, Southwestern, and others for negligence.

The case was tried before a jury of twelve people. Before the introduction of evidence, Sharpless and Southwestern filed a motion in limine seeking to exclude evidence of Sharpless' drug use and driving record. The court reserved its ruling at the time of the motion, but ultimately excluded the evidence. During the trial, the court found as a matter of law that Sharpless was a statutory employee of Southwestern under the Federal Motor Carrier Safety Regulations. *See* 49 C.F.R. § 376.1 *et. seq.* (2005). As a result, the issue of Sharpless' employment was not submitted to the jury.

The jury rendered a 10–2 verdict in favor of the Sim family. After the verdict was returned, the parties learned that juror Harrison, in violation of the court's instructions to the jury, had conducted her own independent internet research of Sharpless' driving record. Sharpless and Southwestern moved for a new trial based on jury misconduct, and the trial court denied the motion.

### Juror Misconduct.

In their first issue, Sharpless and Southwestern complain that they were entitled to a new trial because Harrison's actions constitute juror misconduct which caused an improper verdict. Whether jury misconduct occurred is a question of fact for the trial court. *Golden Eagle Archery, Inc. v. Jackson,* 24 S.W.3d 362, 372 (Tex. 2000); *Pharo v. Chambers County,* 922 S.W.2d 945, 948 (Tex.1996). To establish that they were entitled to a new trial based on juror misconduct, Sharpless and Southwestern had the burden to show that: 1) the misconduct occurred; 2) the misconduct was material; and 3) it reasonably appeared from the evidence and from

the record as a whole that injury probably resulted. Tex.R. Civ. P. 327(a); *Golden Eagle,* 24 S.W.3d at 372. Neither party disputes that Harrison's actions constitute misconduct. Sharpless and Southwestern argue further that Harrison's discovery of sensitive information that the court withheld from the jury is sufficiently egregious to presume both materiality and harm. We disagree.

To show probable injury, there must be some indication in the record that the misconduct likely caused a juror to vote differently than he would otherwise have done on one or more issues vital to the judgment. *Pharo,* 922 S.W.2d at 950; *Rosell v. Central West Motor Stages, Inc.* 89 S.W.3d 643, 661 (Tex.App.–Dallas 2002, pet. denied). There is no probable injury when the jury probably would have rendered the same verdict even if the misconduct had not occurred. *Redinger v. Living, Inc.,* 689 S.W.2d 415 (Tex.1985). When Harrison testified at the hearing on the motion for new trial, she identified the information she had obtained from a public data website. The website, which was the only source she consulted, reflected that Sharpless had prior traffic violations for running a stoplight and failure to obey a stop sign. Harrison did not recall seeing any information about Sharpless' drug use, and was not certain if she had seen any information pertaining to other alcohol related charges. Harrison further testified that the information she discovered from her research had no effect on her deliberations or her vote, and she did not communicate the information to the other jurors. Because there is nothing to establish that the verdict would have been any different had the misconduct not occurred, there is no probable injury.

There is also no probable injury because Harrison's vote did not alter the outcome, and was therefore not vital to the judgment. Harrison did not side with the majority, nor was she one of the ten jurors who signed the verdict for plaintiffs. But even if Harrison had agreed with the majority, the final verdict would simply have been 11–1 in favor of plaintiffs rather than 10–2. Jury misconduct does not require reversal when the verdict would be supported by ten of the twelve jurors required to render a verdict. *Williams v. Viswanathan,* 64 S.W.3d 624, 637 (Tex.App.-Amarillo 2001, no pet.).

The Texas supreme court has recognized certain limited types of misconduct that are "so highly prejudicial and inimical to fairness" that probable injury is established, *prima facie,* by simply showing the improper act. *Texas Employers' Ins. Ass'n v. McCaslin,* 159 Tex. 273, 317 S.W.2d 916, 921 (1958). In *McCaslin,* for example, the misconduct the court deemed prejudicial was conduct that it equated to jury tampering. *Id.* at 918. Other cases where courts have found prima facie harm also involved some type of inappropriate social interaction with jurors. *See e.g., Texas Employers Ins. Ass'n v. Brooks,* 414 S.W.2d 945, 946 (Tex.Civ.App.-Beaumont 1967, no writ) (juror requested and received ride home); *Occidental Life Ins. Co. v. Duncan,* 404 S.W.2d 52, 53 (Tex.Civ. App.-San Antonio 1966, writ ref'd n.r.e.) (plaintiff asked juror for aspirin). But even when applicable, the *McCaslin* presumption of harm is rebuttable. *Mercado v. Warner–Lambert Co.,* 106 S.W.3d 393 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). The misconduct in this case, however, is of an entirely different character and degree. Although Harrison's violation of the court's admonitory instruction against independent investigation had the potential to cause harm, the act itself is not sufficiently prejudicial to justify a presumption of harm.

Appellants advance the same prima facie argument with regard to materiality, urging that we conclude that the misconduct was material per se because of the nature of the information Harrison discovered. Misconduct is material when it is reasonably calculated to prejudice the rights of the complaining party. *Lewis v. Yaggi*, 584 S.W.2d 487, 494 (Tex.Civ.App.-Tyler 1979, writ ref'd n.r.e.). Even if misconduct is material, to justify a new trial there must also be harm. *See Strauss v. Continental Airlines, Inc.*, 67 S.W.3d 428 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Our conclusion that there was no injury obviates the need to consider the materiality prong. The absence of harm is fatal to the inquiry.

On the record before us, the trial court's determination that Sharpless and Southwestern failed to discharge their burden under Rule 327(a) does not constitute an abuse of discretion. We resolve appellants' first issue against them.

### *Sharpless as a Statutory Employee under the FMCSR.*

In their second issue, Sharpless and Southwestern assert that the trial court erred by finding that Sharpless was a statutory employee of Southwestern as a matter of law. Specifically, Sharpless and Southwestern contend that there were unresolved issues of fact concerning whether Southwestern actually "operated" the truck, and therefore the requisite elements of a statutory employee were not met. As a result, Southwestern contends that it had no notice of the negligent hiring claim it was required to defend at trial.

Under the authority of 49 U.S.C. § 14102 (2006), the Secretary of Transportation regulates leases of equipment used in interstate commerce. Historically, some interstate motor carriers attempted to immunize themselves from liability for negligent drivers by leasing trucks and classifying the drivers as independent contractors. *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 38 (Tex.App.-Fort Worth 2002, no pet.). In 1956, Congress amended the statute to require interstate motor carriers to assume control over the vehicles they leased "as if they were the owners of such vehicles." *Id.* The purpose of the amendment was to prevent public confusion about responsibility for accidents and to provide financially responsible defendants. *Id.* The regulations promulgated pursuant to this statute are known as the Federal Motor Carrier Safety Regulations (FMCSR). *See* 49 C.F.R. § 376.1 *et seq.* (2005).

In applying these laws, courts have developed the "statutory employee" principle. Under this principle, the driver is deemed the statutory employee of the carrier, and through this constructive employment relationship, the carrier may be held vicariously liable for the negligence of its "employee" the driver. *Price*, 727 F.2d at 496; *Morris*, 78 S.W.3d at 39; *Empire Indem. Ins. Co., v. Carolina Cas. Ins. Co.*, 838 F.2d 1428, 1433 (5th Cir.1988). A carrier is deemed the statutory employer of the driver when: 1) the carrier does not own the vehicle; 2) the carrier operates the vehicle under an "arrangement" with the owner to provide transportation subject to federal regulations; and 3) the carrier does not literally employ the driver. *Mata v. Andrews Transport, Inc.*, 900 S.W.2d 363, 366 (Tex.App.-Houston [14th Dist.] 1995, no writ).

The record reflects that all three factors identified in *Mata* are present in this case. A.G. Hollenstein, the president of Southwestern, testified that the truck that was driven by Sharpless was owned by Sharpless, not by Southwestern. Hollenstein further testified that Southwestern operates its business by con-

tracting with truck drivers to haul loads. Consistent with this practice, Sharpless was not literally employed by Southwestern. When Hollenstein was asked whether Sharpless was the driver for Southwestern that day, Hollenstein replied, "he was leased to us. Yes, sir." Sharpless testified that he was paid a percentage of what Southwestern received for hauling the load. Southwestern was responsible for obtaining the permit and the route in accordance with the applicable regulations. When a leased driver is operating under the permit of a licensed carrier, the driver is considered a statutory employee of the carrier. *Empire*, 838 F.2d at 1433. Because of the arrangement between Sharpless and Southwestern, Southwestern is deemed to operate the vehicle. Thus, the trial court correctly determined that Sharpless was a statutory employee of Southwestern.

Southwestern and Sharpless seek to avoid the application of the statutory employee doctrine by arguing that Southwestern did not actually operate the truck. However, under the FMCSR it is immaterial who physically operates the truck. The carrier's operation of the vehicle arises through the application of the statute. *See* 49 C.F.R. § 376.12(c)(1). Moreover, Hollenstein testified that the regulations require trucks to display a sign that identifies the person or company with the operating authority for the truck. Hollenstein acknowledged that the Southwestern sign was displayed on Sharpless' truck and Southwestern had the operating authority for the truck. As mentioned previously, the purpose of the FMCSR was to prevent confusion about financial responsibility by imposing responsibility on the carrier. The interpretation appellants advance is contrary to this stated purpose.

■ We are equally unpersuaded by Southwestern's assertion that Sharpless was not a statutory employee because he was an independent contractor. The section of the FMCSR that references independent contractor relationships does not change the application of the statutory employee doctrine. Specifically, the FMCSR provides:

Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the [driver] ... is an independent contractor or an employee of the authorized carrier.... An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. 14102 and attendant administrative regulations.

49 C.F.R. § 376.12(c)(4) (2005). The reference to 49 U.S.C. § 14102 is not without significance. This section states that the carrier will "have control of and be responsible for operating [the vehicles] ... as if [the vehicles] were owned by the motor carrier." 49 U.S.C. § 14102(a)(4) (2006). Reconciling the two provisions, they provide that an independent contractor relationship between a carrier and a driver is not foreclosed under the statute. Regardless of the type of relationship between the carrier and the driver, however, the carrier is not excused from the regulations that treat the driver as a statutory employee for purposes of liability to the general public. *See Tamez*, 155 S.W.3d at 573 (citing *Pouliot v. Paul Arpin Van Lines, Inc.*, 292 F.Supp.2d 374, 383 (D.Conn. 2003)). Consequently, the independent contractor provision of the statute does not apply for purposes of determining whether Southwestern is vicariously liable to the Sim family for Sharpless' negligence.

■ Finally, Sharpless and Southwestern argue that because the Sim family plead only that Sharpless was an employee of Southwestern rather than specifying that he was a statutory employee, there was inadequate notice of the claim for the

court to have considered the issue. Plaintiffs' petition not only stated that Sharpless was an employee, but that by application of the doctrine of respondeat superior, Southwestern was liable for all acts and omissions of Sharpless as its agent, employee, or representative. Although the petition did not expressly reference the regulations, the vicarious liability of a carrier under the statutory employee doctrine arises through the doctrine of respondeat superior. *Mata,* 900 S.W.2d at 366. Moreover, there is no evidence in the record that Southwestern specially excepted to plaintiffs' petition. The pleadings were adequate to give fair notice of the claim. *See City of Houston v. Howard,* 786 S.W.2d 391, 393 (Tex.App.-Houston [14th Dist.] 1990, writ denied) (a pleading gives fair notice when a reasonably competent opponent can determine the nature of the controversy and the relevant testimony that will be required). Appellants' second issue is resolved against them. Finding no reversible error, the judgment of the trial court is affirmed.