Luci MARTINEZ, Individually and as Representative of the Estate of Luis Martinez, José Martinez, and Maria Martinez, Appellants,

v.

HAYS CONSTRUCTION, INC., Appellee.

No. 01–09–00593–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 12, 2011.

Rick Molina, Molina Law Firm, Houston, TX, for Appellants.

William Todd Albin, Albin Harrison Roach, Plano, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

Appellants, Luci Martinez, individually and as representative of the estate of Luis Martinez, José Martinez, and Maria Martinez (collectively, "Martinez"), sued Hays Construction, Inc. ("Hays Construction"), alleging claims for negligent hiring, negligence per se, and vicarious liability under the Texas Motor Carrier Safety Regulations arising out of a fatal traffic accident between Luis Martinez and Delfino Bello. The trial court rendered summary judgment in favor of Hays Construction on all of Martinez's claims. In four issues on appeal, Martinez contends that the trial court erred in (1) rendering summary judgment on her negligent hiring claim because fact issues exist regarding Hays Construction's employment of "unqualified and incompetent independent contractors," namely Delfino Bello and Moises Melendez; (2) applying the Texas Motor Carrier Safety Regulations, which impose statutory vicarious liability on Hays Construction for Delfino's negligence; (3) rendering summary judgment on Martinez's other negligence-based and punitive damages claims because Hays Construction did not present these grounds for summary judgment to the trial court; and (4) admitting the affidavit of Philip Hays ("Hays"), president of Hays Construction, as summary judgment evidence.

We reverse the judgment of the trial court and remand the case for further proceedings.

## Background

In 2006, Hays Construction contracted with the Harris County Flood Control District to perform excavation work on Braes Bayou in Houston. As part of this contract, Hays entered into a "Material Disposal Agreement" with Sprint Sand & Clay L.P. ("Sprint") to provide a location for the dirt excavated and removed from the Braes Bayou worksite. Hays Construction does not perform its own hauling services, so it contracted with third parties, including Anderson Dump Trucking, Inc. and Moises Melendez, to remove the excavated dirt from the worksite and deliver it to Sprint.[1]

According to Philip Hays, the president of Hays Construction, Hays Construction contacted Anderson, Melendez, and other "truck brokers" and asked them to quote the cost of hauling materials from the worksite to Sprint. After the hauling companies provided an acceptable cost-per-load, Hays Construction contacted the companies each day and requested their services based on the amount of materials that Hays Construction needed removed from the site. Hays Construction asked each company to haul loads from the Braes Bayou site and contact other drivers and trucking companies who could also perform hauling services.

Jessie Frantz, the project manager for the Braes Bayou excavation, met with Melendez and asked him to haul dirt in his dump truck. Melendez provided proof of insurance, but he did not remember completing official paperwork regarding his employment and driving history. In his

---

1. Martinez sued Melendez for the same causes of action asserted against Hays. In a previous appeal, this Court held that no employer-employee relationship existed between Melendez and Delfino Bello, and, therefore, the trial court correctly rendered summary judgment in favor of Melendez on Martinez's negligent hiring and Texas Motor Carrier Safety Regulations claims against him. *See Martinez v. Melendez,* No. 01–08–00850–CV, 2009 WL 4357794, at *4 (Tex.App.-Houston [1st Dist.] Dec. 3, 2009, pet. denied) (mem. op.).

deposition, Melendez testified that Frantz told him that, if he knew other truckers, Melendez could inform them of the hauling opportunities on the Braes Bayou project. Frantz did not ask Melendez to provide Hays Construction a list of the drivers he had contacted or information regarding their qualifications to drive dump trucks. Melendez contacted a friend of his, Marcos Benitez, who informed Salvador Bello, the owner and sole proprietor of Bello Transportation, of the hauling work at the Braes Bayou site. Melendez testified that he did not hire Salvador or Bello Transportation, although Melendez told him the details of the project when Salvador inquired.

According to Melendez, the truckers would line up at the Braes Bayou worksite. A Hays Construction employee would ask for their drivers' licenses and proof that Hays Construction had been added to their insurance as an additional insured. Hays Construction also provided hauling permits. A Hays Construction employee would then load the dump trucks with dirt at the worksite, and the drivers would deliver the dirt to Sprint. Melendez testified that the individual drivers had no control over how much dirt was loaded into their dump trucks, and the drivers could not request removal of dirt if they felt that the truck was overloaded. After the dirt was delivered, a Sprint employee would give the driver a receipt stating that the driver had completed one haul. Salvador Bello gave his receipts to Melendez and Melendez gave his and Salvador's receipts to Hays Construction. Hays Construction paid Melendez the agreed cost-per-load amount, and Melendez then paid Salvador the amount corresponding to the number of hauling trips that Salvador completed. Melendez stated that he was not responsible for Salvador's work, and he presented Salvador's hauling tickets to Hays Construction because Salvador "didn't do a lot of trips." For each receipt that Salvador

gave to Melendez, Melendez kept $2.00 of the payment from Hays Construction. Melendez paid Salvador with a personal check. The same procedure was followed with Delfino.

Salvador testified in his deposition that he worked with Melendez on the project for two days. Salvador, who was not sure of the name of the company that had hired Melendez, told his brother, Delfino, about the details of the job. Salvador did not consider Delfino to be an employee of Bello Transportation, although Delfino testified that he had worked for Bello Transportation for about two or three months and that Salvador paid him approximately $100 a week in cash for his services. Delfino testified that he did not look for hauling work on his own, but instead only took the jobs that Salvador instructed him to take.

Delfino hauled dirt from the Braes Bayou site for two days without incident. On his third hauling trip on the morning of his third day of working, Delfino collided with Luis Martinez's car en route to Sprint from the Braes Bayou worksite. Luis died from his injuries, and his family and estate initially sued Delfino, Salvador, Salvador's wife Maria, and Bello Transportation (collectively, the "Bello defendants").

In her sixth amended petition, which alleged causes of action against Melendez and Hays Construction in addition to the Bello defendants, Martinez alleged that, at the time of the accident, Delfino was involved in the "course and scope of [his] employment [with] Bello Transportation, Hays Construction, Inc., and Mr. Moises Melendez." Martinez contended that the defendants were negligent per se by violating sections 544.007, 545.151, and 545.413 of the Texas Transportation Code, sections 19.04 and 19.05 of the Texas Penal Code, and "the applicable provisions of the Fed-

eral Motor Carrier Safety Regulations as adopted by the Texas Department of Public Safety." Martinez alleged that Hays Construction was the "statutory employer" of Melendez and the Bello defendants pursuant to section 390.5 of the Federal Motor Carrier Safety Regulations ("FMCSR"), and thus Hays Construction was vicariously liable for their negligence. Martinez also asserted a claim of negligent hiring, training, control, and supervision against Hays Construction regarding Melendez and the Bello defendants, because Hays Construction "knew or should have known that Moises Melendez and the Bello defendants were not skilled, fit, qualified, or competent to operate the dump truck involved in this case." Martinez further alleged that Hays Construction was "directly negligent" for attempting to delegate the non-delegable duty to avoid harm to members of the public. Martinez sought exemplary damages in addition to actual damages.[2]

Hays Construction moved for traditional and no-evidence summary judgment on each of Martinez's claims against it.[3] It contended that all of Martinez's negligence-based claims failed because no employer-employee relationship existed between itself and Delfino. According to Philip Hays, Hays Construction never employed Delfino in any capacity, either as an employee or an independent contractor, and it never had any contact with Delfino. Instead, "[w]ithout relation to Hays [Construction] and without Hays [Construction's] knowledge, Melendez recruited, solicited or involved Delfino Bello of Bello Transportation to assist" Melendez in hauling dirt from the worksite. Hays

averred that Hays Construction did not "select, control[,] or direct" the drivers that Melendez and Anderson Dump Trucking provided, and it did not provide dump trucks or take possession and control over the trucks used to haul dirt. Hays Construction "lacked the ability to hire or fire the drivers of the Bello Transportation truck"; it did not provide any benefits to the truck drivers; it did not control "the drivers' route, timing, driving skills or training"; it did not include Melendez or any of the drivers on its workers' compensation insurance; and it did not directly pay any of the drivers. Hays denied that any relationship existed between Hays Construction and Delfino.

Hays Construction also contended that summary judgment was proper on Martinez's negligence claims because the trial court had already granted Melendez's summary judgment motion, ruling as a matter of law that he was not negligent, and Melendez "was the only link between Hays [Construction] and Bello." Hays Construction additionally asserted that imputing vicarious liability to it on the basis of the alleged independent contractor status of Melendez and Delfino was improper because Hays Construction did not assert any control over Bello Transportation or Delfino at the time of the accident.

Hays Construction further argued that summary judgment was proper under the FMCSR and its Texas counterpart because it was not the statutory employer of Melendez or the Bello defendants. Hays Construction denied that it was a "motor carrier" under the FMCSR because it did

---

2. Martinez also asserted a claim for joint enterprise liability, which Hays Construction challenged in its summary judgment motion. Martinez does not challenge the trial court's rendition of summary judgment on this claim on appeal.

3. As summary judgment evidence, Hays Construction attached the affidavit of Philip Hays, excerpts from the depositions of Delfino and Salvador Bello, and discovery responses from Melendez.

not provide "commercial motor vehicle transportation for compensation" and, therefore, the FMCSR did not apply. Hays Construction also contended that, even if the FMCSR did apply, it was not a statutory employer because it did not own or lease the dump truck driven by Delfino, nor did it assign an employee to operate the truck.

Hays Construction also moved for summary judgment on Martinez's negligence per se claims, contending that Martinez could not establish that it had violated any of the statutes identified in her petition. Specifically, because Hays Construction did not operate the truck or control Delfino, it did not violate the Transportation Code sections. Hays Construction asserted that it did not violate the alleged sections of the Penal Code because it did not employ or control Delfino. Hays Construction further contended that Martinez's claim for punitive damages failed because Martinez could not recover as a matter of law on the causes of action underlying the request for punitive damages: negligence and negligence per se.

Hays Construction also moved for no-evidence summary judgment. It contended that Martinez could produce no evidence that it owed a legal duty to Martinez, that either Delfino or Melendez was an employee of Hays Construction, that Hays Construction retained control over Delfino and Melendez, that Hays Construction was a motor carrier or statutory employer under the FMCSR, that it was vicariously liable under the FMCSR, or that it breached any legal duty that it may have owed to Martinez. Regarding the negligence per se claim, Hays Construction identified each element of the claim and stated that Martinez could produce no supporting evidence.

In response, Martinez moved to strike the affidavit of Philip Hays on the ground that he did not have personal knowledge of the facts stated in the affidavit. The deposition testimony of both Hays and Melendez demonstrated that Jessie Frantz, Hays Construction's project manager for the Bares Bayou site, hired Melendez and that Philip Hays himself never spoke with Melendez. Martinez therefore contended that "Mr. Hays' information is likely based on information told to him by Jessie Frantz, who has not been deposed," and thus all of the facts included in his affidavit were "based on hearsay and speculation."

Martinez also attached excerpts from the depositions of Hays and Melendez, and contended that contradictions between their testimony "creat[ed] fact issues that defeat summary judgment." For example, Hays testified that Hays Construction hired Melendez "as a truck broker," but Melendez testified that he was hired as a driver and not a broker. Hays also testified that Melendez hired Bello Transportation, but Melendez testified that, although he called a friend about the project and informed Salvador of the details of the project, he did not actually hire anyone. Martinez acknowledged the conflicting testimony regarding who hired Delfino and argued that, although Hays claimed Melendez hired Delfino, Melendez stated that he did not hire Delfino, and Delfino was not sure who hired him, ultimately, "this was Hays [Construction's] project and they controlled who was hired and who was fired." Martinez contended that a fact issue existed regarding whether Hays Construction hired Delfino and stated that, "there is no doubt that Hays Construction was responsible for the persons employed on its project."

Martinez further contended that a fact issue existed on hiring and control because Hays Construction had the ultimate responsibility of removing dirt from the bayou; it told "truck brokers" like Melendez

to tell other truck drivers about the hauling opportunities on its project; it controlled the loading of the dump trucks at the Braes Bayou site; its employees actually loaded the dump trucks; it checked the truck drivers' proof of insurance and licenses; it obtained the hauling permits for the dirt; it received compensation from the Harris County Flood Control District for hauling the dirt; it determined the ultimate location for unloading the dirt; and it controlled who was hired and fired from the project.

Martinez argued that a fact issue existed regarding whether Hays Construction negligently hired Melendez as a "truck broker" because it did not perform a background check on Melendez, it did not inquire into his qualifications or experience, and it did not require Melendez to fill out an employment application. Melendez and Delfino both admitted in their deposition testimony that they were not familiar with the Texas and federal motor carrier rules. As a result, according to Martinez, Hays Construction was clearly "responsible for the hiring of unqualified persons to fulfill the duties that [Hays Construction was] ultimately responsible for."

Martinez disputed Hays Construction's contention that it was not a "motor carrier" and argued that "[i]t is absurd to think that Hays [Construction] is not a motor carrier when it clearly enters into multi-million dollar contracts with the County ... that specifically require that [it] remove, haul, and transport material for compensation." Martinez also argued that Hays Construction was a "statutory employer" because it assigned employees, such as Melendez, "to operate its business and to assist in the hauling of the dirt, which was ultimately Hays [Construction's] responsibility."

The trial court overruled Martinez's objections to Hays Construction's summary judgment evidence and rendered summary judgment in favor of Hays Construction on all of the claims asserted against it.

## Standard of Review

■ We review de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When a party moves for both traditional and no-evidence summary judgment, and our determination of the no-evidence summary judgment could make the grounds asserted in the traditional motion moot, we first review the trial court's ruling under the no-evidence standard of review. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004). If the trial court properly granted the no-evidence motion, we do not consider the arguments raised regarding the traditional summary judgment motion. *Id.*

After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX.R. CIV. P. 166a(i); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.). The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX.R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The trial court must grant the motion unless the nonmovant presents more than a scintilla of evidence raising a fact issue on the challenged elements. *Flameout Design & Fabrication*, 994 S.W.2d at 834; *see also Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997) ("More than a scintilla of evidence exists when the evidence support-

ing the finding, as a whole, 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.' " (quoting *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995))). To determine if the nonmovant has raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding,* 289 S.W.3d at 848 (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005)). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002) (citing *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997)).

To prevail on a traditional summary judgment motion, the movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). When, as here, the trial court's summary judgment does not state the basis for the court's decision, we must uphold the judgment if any of the theories advanced in the motion are meritorious. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex.2003).

### Admission of Philip Hays's Affidavit

In her fourth issue, Martinez contends that the trial court erred in overruling her motion to strike Philip Hays's summary judgment affidavit because the affidavit was not based on personal knowledge and because Hays's affidavit testimony was contradicted by Melendez's deposition testimony and by this Court's opinion in *Melendez.* We address this issue before addressing the merits of the summary judgment.

We review a trial court's decision to admit or exclude summary judgment evidence for an abuse of discretion. *Paciwest, Inc. v. Warner Alan Props., LLC,* 266 S.W.3d 559, 567 (Tex.App.-Fort Worth 2008, pet. denied). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Carpenter v. Cimarron Hydrocarbons Corp.,* 98 S.W.3d 682, 687 (Tex.2002). We must uphold the trial court's ruling if there is any legitimate basis in the record to support it. *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex.1998). We will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1(a)(1); *Wal–Mart Stores, Inc. v. Johnson,* 106 S.W.3d 718, 723 (Tex.2003).

Affidavits supporting a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX.R. CIV. P. 166a(f). A corporate officer may testify to facts regarding corporate activities. *See Exito Elecs. Co. v. Trejo,* 99 S.W.3d 360, 372 (Tex.App.-Corpus Christi 2003) ("[W]ith regard to the personal knowledge of corporate representatives, officers such as vice-presidents, secretaries, and board presidents may testify to facts regarding the corporation's activities."), *rev'd on other grounds,* 142 S.W.3d 302 (Tex.2004); *see also Waite v. BancTexas–Houston, N.A.,* 792 S.W.2d 538, 540 (Tex.App.-Houston [1st Dist.] 1990, no writ) (holding summary judgment affidavit admissible, even though officer not employed with bank at time of relevant events, because officer able to gain knowledge of facts testified to during employment and officer's statement of current position demonstrated how he gained per-

sonal knowledge of particular sale). Even if an affiant later explains that his affidavit testimony was based on his review of corporate business records, the affiant's "acknowledgement of the sources from which he gathered his knowledge does not violate the personal knowledge requirement." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 224 (Tex.2004); *Asshauer v. Glimcher Realty Trust*, 228 S.W.3d 922, 926 (Tex.App.-Dallas 2007, no pet.).

■ Here, Philip Hays is the president of Hays Construction. Although Hays acknowledged in his deposition that he did not meet with Melendez before the company hired him to work on the Braes Bayou project, it is not unreasonable to assume that Jessie Frantz, the project manager for Hays Construction who hired Melendez, informed Hays of their meeting and the circumstances in which Frantz hired Melendez before Hays made his affidavit for this case. The mere fact that Hays did not personally hire Melendez or involve himself in the day-to-day operation of Hays Construction's Braes Bayou project, but instead gathered his knowledge about the project from other corporate sources at Hays Construction for the purpose of completing his affidavit, does not violate the personal knowledge requirement. *See In re DuPont*, 136 S.W.3d at 224.

On appeal, Martinez argues that the trial court should have struck Hays's affidavit because, although Hays averred that Melendez recruited Bello Transportation, Hays testified in his deposition that Melendez was a "truck broker" responsible for hauling and arranging for hauling of the dirt. Furthermore, Melendez disputed this fact in his deposition, and this Court agreed with Melendez by finding that Melendez was a "referring driver" and not a "truck broker."

In *Melendez*, however, we discounted the relevance of the "truck broker" and "referring driver" distinction, and noted that, in determining Melendez's liability, the issue was whether Melendez exercised control over the details of Delfino's work, and not how Hays Construction labeled the relationship between the parties. *Martinez v. Melendez*, No. 01–08–00850–CV, 2009 WL 4357794, at *3 (Tex.App.-Houston [1st Dist.] Dec. 3, 2009, pet. denied) (mem. op.). Furthermore, Martinez provides no authority for why the contradiction between the testimony of Melendez and Philip Hays over what, precisely, Hays Construction hired Melendez to do and the particular label to be applied to Melendez constitutes a basis for striking Philip Hays's affidavit as summary judgment evidence. We therefore hold that Martinez has failed to demonstrate that the trial court abused its discretion in admitting Hays's affidavit.

We overrule Martinez's fourth issue.

### Negligent Hiring

In her first issue, Martinez contends that the trial court erred in rendering summary judgment in favor of Hays Construction because fact issues exist regarding whether it negligently hired "unqualified and incompetent independent contractors."

The sole argument Hays Construction made in its summary judgment motion on the issue of negligent hiring was that it could not be liable for any of Martinez's negligence-based claims because no relationship existed between Hays Construction and Delfino—Hays Construction never hired Delfino either as an employee or as an independent contractor. Therefore, it had no legal duty to protect Luis Martinez from Delfino's actions. On appeal, Martinez argues that she raised a fact issue regarding who hired Delfino because "Hays Construction claims Mr. Melendez

hired Mr. [Delfino] Bello. Mr. Melendez states that he did not hire Mr. [Delfino] Bello. Mr. Bello states that he is not sure who hired him." In first issue on appeal, Martinez also contends, as she did below, that, in addition to negligently hiring Delfino as a driver, Hays Construction negligently hired Melendez to act as a "truck broker" because Melendez was not qualified to act in this capacity.

To successfully prosecute a claim of negligent hiring, Martinez must demonstrate that (1) Hays Construction owed a legal duty to protect Luis Martinez from Delfino's or Melendez's actions and (2) Luis sustained damages proximately caused by Hays Construction's breach of that legal duty. *See Thomas v. CNC Invs., L.L.P.,* 234 S.W.3d 111, 123 (Tex.App.-Houston [1st Dist.] 2007, no pet.); *see also TXI Transp. Co. v. Hughes,* 306 S.W.3d 230, 240 (Tex.2010) ("In a negligent-hiring or negligent-entrustment claim, a plaintiff must show that the risk that caused the entrustment or hiring to be negligent also proximately caused plaintiff's injuries.").

The duty of the employer extends only to prevent the employee or independent contractor from causing physical harm to a third party. *Wrenn v. G.A.T.X. Logistics, Inc.,* 73 S.W.3d 489, 496 (Tex.App.-Fort Worth 2002, no pet.); *see also Mireles v. Ashley,* 201 S.W.3d 779, 782 (Tex.App.-Amarillo 2006, no pet.) (applying negligent hiring principles to independent contractor and stating that employer must use ordinary care in hiring contractor). The employer owes a duty to the general public to ascertain the qualifications and competence of the employees and independent contractors it hires, "especially when the employees are engaged in occupations that require skill or experience and that could be hazardous to the safety of others." *Morris v. JTM Materials, Inc.,* 78 S.W.3d 28, 49 (Tex.App.-Fort

Worth 2002, no pet.). Thus, an employer is liable for negligent hiring if it "hires an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." *Id.*

The plaintiff must demonstrate that the employer's hiring of the allegedly incompetent employee or independent contractor proximately caused the plaintiff's injuries. *See Thomas,* 234 S.W.3d at 123; *Morris,* 78 S.W.3d at 49. The proximate cause element of a negligent hiring claim consists of cause in fact and foreseeability. *Thomas,* 234 S.W.3d at 123 (citing *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995)). A plaintiff establishes cause in fact if she demonstrates that the negligent act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *Id.* (citing *Prudential Ins. Co. v. Jefferson Assocs., Ltd.,* 896 S.W.2d 156, 161 (Tex.1995)). Cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible. *Doe,* 907 S.W.2d at 477.

If the performance of the employment contract requires driving a vehicle, the employer has an affirmative duty to investigate the employee or independent contractor's competency to drive. *Mireles,* 201 S.W.3d at 782–83; *Morris,* 78 S.W.3d at 49. An employer is not negligent when there is nothing in the employee's background that would cause a reasonable employer not to hire or retain the employee. *Dangerfield v. Ormsby,* 264 S.W.3d 904, 912 (Tex.App.Fort Worth 2008, no pet.); *Ogg v. Dillard's, Inc.,* 239 S.W.3d 409, 421 (Tex.App.-Dallas 2007, pet. denied); *see also Mireles,* 201 S.W.3d at 783 ("However, Ashley could not know that West was an incompetent driver unless West was, in

fact, an incompetent driver."); *Wasson v. Stracener,* 786 S.W.2d 414, 422 (Tex.App.-Texarkana 1990, writ denied) ("Even if Stracener were found to have been negligent in his manner of selecting Freeman, [failure to check Freeman's driving record] would not create liability unless there was also evidence that Freeman was incompetent.").

### A. *Hays Construction's Negligent Hiring of Melendez*

In one sub-issue, Martinez argues that she raised a fact issue on Hays Construction's negligent hiring of Melendez as a broker to find drivers to haul dirt from its Braes Bayou worksite. Hays Construction argued in its summary judgment motion, and argues in response to Martinez's sub-issue on appeal, that, without its knowledge, Melendez "recruited, solicited, or involved" Delfino to assist him in hauling dirt from the worksite and that it did not "select, control[,] or direct" the drivers Melendez provided for the site. Therefore, as Melendez "was the only link between Hays [Construction] and Bello," Hays Construction's hiring of Melendez could not have proximately caused Martinez's death.

In our previous opinion in *Melendez,* we affirmed the trial court's summary judgment dismissing Martinez's wrongful death negligence claims against Melendez. *Melendez,* 2009 WL 4357794, at *4. We observed in that opinion that, at the time of the accident, Melendez "worked at the Hays [Construction] site[ ] hauling dirt in his own truck." *Id.* at *1. We stated:

> According to the summary judgment record, when Hays [Construction] needed a dump truck driver to haul dirt from a site, a representative contacted an independent truck driver, usually one who has worked on previous projects for Hays [Construction], discussed the project and asked the driver to haul loads

and to refer other drivers. That driver, in turn, contacts other drivers, each of whom uses his own truck to haul loads of dirt. Hays [Construction] checks the drivers' proof of insurance when they arrive at the work site. Hays [Construction] also provides hauling permits for the drivers.

> The referring driver does not supervise the other drivers he brings to the project, but instead collects tickets from each driver at the end of the week documenting the number of hauls made by that driver. Then, he adds them, includes his own haul numbers, and provides the total to Hays [Construction]. Hays [Construction] issues one check to the referring driver, who then divides the money among the drivers according to the number of hauls made by each.

> In this instance, when Hays [Construction] asked Melendez if he could refer other drivers to work on the excavation project, Melendez contacted a driver he knew named Marcos Benitez. Benitez, in turn, contacted Salvador to inform him of the available job and of Melendez's telephone number.

. . . .

> Salvador called Melendez, who described the Hays [Construction Braes Bayou] project. Salvador reported to the Hays [Construction] site with Melendez and began hauling the dirt. Melendez and Salvador each prepared trip tickets, which Melendez submitted to Hays [Construction] for payment. After receiving the payment from Hays [Construction], Melendez wrote a personal check, made payable to Salvador, individually, to give Salvador his share.

. . . .

> One week, after learning of the job from Salvador, Delfino reported to work

at the Hays [Construction Braes Bayou] site.

*Melendez*, 2009 WL 4357794, at *1–2.

To successfully maintain a claim against Hays Construction for negligently hiring Melendez, Martinez would have to prove that Hays Construction's negligent hiring of Melendez as a truck broker proximately caused Martinez's injuries, i.e., that Martinez's injuries from the crash with Delfino were foreseeable from Hays Construction's negligent hiring of Melendez and would not have occurred but for that act of negligence. *See Thomas*, 234 S.W.3d at 123. We have previously held, however, that Melendez was not Delfino's employer. *Melendez*, 2009 WL 4357794, at *4. We noted that the summary judgment evidence reflected that Melendez—who had spoken with Salvador Bello about the job, had handed in Salvador's trip receipts to Hays Construction, and had only had contact with Salvador—was unaware that Delfino Bello was driving the Bello Transportation truck. *Id.* Instead, Salvador had informed Delfino about the work at the Hays Construction Braes Bayou site, which Salvador had heard about through Melendez. *Id.* The evidence demonstrated that Melendez had no control over the details of Delfino's work and had no authority to hire or fire Delfino. *Id.* We concluded that "no general employer-employee relationship exist[ed]" between Melendez and Delfino to impose either vicarious liability under a respondeat superior theory or direct liability under a negligent hiring theory on Melendez as a result of Delfino's actions. *Id.*

In the present suit, Martinez presented no evidence that Melendez referred Delfino to Hays Construction for the hauling work.

We conclude, therefore, that Martinez cannot establish that the decision by Hays Construction to hire Melendez as a truck broker proximately caused the injuries to Luis Martinez. We hold that the trial court correctly rendered summary judgment on Martinez's claim against Hays Construction for negligently hiring Melendez as a truck broker.

We overrule this sub-part of Martinez's first issue.

### B. Hays Construction's Negligent Hiring of Delfino

In a second sub-issue, Martinez argues, and Hays Construction agrees, that all of Hays Construction's arguments in its summary judgment motion regarding Martinez's negligence-based claims turn on the non-existence of a duty owed to Martinez by Hays Construction due to Hays Construction's not having hired Delfino. Martinez argues that she has raised a fact issue with respect to Hays Construction's hiring of Delfino as an independent contractor, and, therefore, she has raised a fact issue with respect to each of her negligence-based claims.

Martinez presented summary judgment evidence that, as part of its contractual obligations to the Harris County Flood Control District, Hays Construction determined that the dirt would be removed from the Braes Bayou worksite and taken to Sprint. Hays Construction bore the ultimate responsibility for removing the dirt from the worksite, and it obtained the earth hauling permits necessary for transporting the dirt to Sprint. According to the deposition testimony of Philip Hays, the president of Hays Construction, Hays Construction's project manager, Jessie Frantz, hired Melendez as a truck broker to obtain drivers for the worksite. Melendez stated that Frantz told him that if he knew other truck drivers, he could inform them that hauling opportunities were available as part of the project. The parties agreed that truck drivers would report to

the Hays Construction Braes Bayou worksite for work hauling dirt from the worksite to the Sprint site. Hays Construction employees checked each driver's license and proof of insurance before the driver left the worksite to haul the dirt to Sprint. The parties also agreed that the drivers were required to list Hays Construction as an additional insured on their insurance. Melendez testified that Hays Construction employees loaded each dump truck at the worksite, and the individual drivers had no control in determining the amount of dirt loaded into the trucks or in determining the place to which the dirt was to be delivered—Sprint. Sprint issued receipts upon delivery to it of dirt from the Hays Construction Braes Bayou worksite. Melendez turned in the Sprint receipts for Salvador, Delfino, and himself to Hays Construction, and Hays Construction paid Melendez on a per-load basis. Melendez, in turn, paid Delfino the amount of money received from Hays Construction for Delfino's delivery of each load of dirt to Sprint, minus a $2.00 fee on each load delivered. Philip Hays, in his deposition, stated that Hays Construction could fire drivers if they were not completing their jobs.

Viewing the evidence in the light most favorable to Martinez, we hold that Martinez raised a fact issue regarding whether Hays Construction hired Delfino Bello as an independent contractor to haul dirt from the Hays Construction Braes Bayou worksite to Sprint.

We sustain Martinez's first issue.

### Liability under Texas Motor Carrier Safety Regulations

In her second issue, Martinez contends that the trial court incorrectly applied the Texas Motor Carrier Safety Regulations ("TMCSR") because Hays Construction is both a "motor carrier" and a "statutory employer" under the TMCSR and, there-

fore, is vicariously liable for Delfino's negligence.

Historically, interstate motor carriers have attempted to immunize themselves from liability for negligent drivers by leasing trucks and classifying the drivers as independent contractors. *Sharpless v. Sim*, 209 S.W.3d 825, 829 (Tex.App.-Dallas 2006, pet. denied); *Morris*, 78 S.W.3d at 37. In response, Congress amended the Interstate Common Carrier Act to "require interstate motor carriers to assume full direction and control of the vehicles that they leased 'as if they were the owners of such vehicles.'" *Morris*, 78 S.W.3d at 38 (quoting *Price v. Westmoreland*, 727 F.2d 494, 495–96 (5th Cir.1984)). The goal of the amendments was to "ensure that interstate motor carriers would be fully responsible for the maintenance and operation of the leased equipment and the supervision of the borrowed drivers...." *Id.* To effectuate the purposes of the Interstate Common Carrier Act, the Interstate Commerce Commission promulgated the Federal Motor Carrier Safety Regulations ("FMCSR") which, among other requirements, impose vicarious liability upon interstate motor carriers for the negligence of their statutory employee drivers. *Id.* at 38–39.

The Texas Department of Public Safety has adopted a majority of the FMCSR. 37 TEX. ADMIN. CODE § 4.11(a) (2010) (Tex. Dep't of Pub. Safety, Gen. Applicability & Definitions).

■ Among the definitions adopted were the definitions of "statutory employer" and "statutory employee" set out in Rule 390.5 of the FMCSR. The FMCSR define "employer" as "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate

it. . . ." Federal Motor Carrier Safety Regulations, 49 C.F.R. § 390.5 (2009). An "employee" is "any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety."[4] *Id.* This definition includes an independent contractor "while in the course of operating a commercial motor vehicle." *Id.; see also Consumers Cnty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 364–66 (5th Cir. 2002) (observing that Motor Carrier Safety Act eliminated distinction between employees and independent contractors); *Sharpless*, 209 S.W.3d at 830 (rejecting carrier's argument that driver was not statutory employee because he was independent contractor). A motor carrier is vicariously liable for the negligence of its "statutory employee" drivers. *See Morris*, 78 S.W.3d at 39; *Sharpless*, 209 S.W.3d at 829.

In adopting the FMCSR, however, the Department of Public Safety specified that, instead of using the federal definition in the FMCSR, as it did in defining "statutory employer," "the definition of motor carrier will be the same as that given in Texas Transportation Code, § 643.001(6) when vehicles operated by the motor carrier meet the applicability requirements of subsection (c) of this section."[5] 37 TEX. ADMIN. CODE § 4.11(b)(1). The Transportation Code defines "motor carrier" as "an individual, association, corporation, or other legal entity that controls, operates, or directs the operation of one or more vehicles that transport persons or cargo over a road or highway in this state."[6] TEX. TRANSP. CODE ANN. § 643.001(6) (Vernon Supp.2010).

### A. Hays Construction's Liability to Martinez as a Motor Carrier

Hays Construction moved for both traditional and no-evidence summary judgment on the ground that it does not qualify as a "motor carrier" under the FMCSR. It did

---

4. To the extent Martinez contends that Bello Transportation is a "statutory employee" of Hays Construction, we note that Rule 390.5 specifically defines "employee" as "any individual." *See* Federal Motor Carrier Safety Regulations, 49 C.F.R. § 390.5 (2009). "Employer," meanwhile, is defined as "any person," which is further defined as "any individual, partnership, association, corporation, business trust, or any other organized group of individuals." *Id.* Under a plain reading of Rule 390.5, therefore, Bello Transportation, a sole proprietorship, cannot be an employee. *See Ill. Bulk Carrier, Inc. v. Jackson*, 908 N.E.2d 248, 255–56 (Ind.Ct.App.2009); *see also Brown v. Truck Connections Int'l, Inc.*, 526 F.Supp.2d 920, 925 (E.D.Ark.2007) (noting language difference between "employee" and "employer" definitions suggests that "individual" refers to "human beings and not to corporations or other legal persons").

5. Rule 390.5 of the FMCSR defines "motor carrier" as "a for-hire motor carrier or a private motor carrier." 49 C.F.R. § 390.5 (2009). The rule further defines "for-hire motor carrier" as "a person engaged in the transportation of goods or passengers for compensation" and defines "private motor carrier" as "a person who provides transportation of property or passengers, by commercial motor vehicle, and is not a for-hire motor carrier." *Id.* Martinez does not argue that Hays Construction qualifies as a motor carrier under the FMCSR—merely that it qualifies under the Transportation Code definition.

6. No case law exists interpreting this definition of "motor carrier." The previous definition, article 911b of the Revised Civil Statutes, defined motor carrier as any legal entity or person that operates or owns "any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this state. . . ." *See R.R. Comm'n of Tex. v. Waste Mgmt. of Tex., Inc.*, 880 S.W.2d 835, 838 (Tex.App.-Austin 1994, no writ); *All Star Van & Storage v. Admiral Storage & Van, Inc.*, 658 S.W.2d 213, 215 (Tex. App.-El Paso 1983, writ ref'd) ("Under 911b, a motor carrier is one using the highways between incorporated cities 'transporting property for compensation or hire'—the property of others.").

not argue that it did not qualify as a motor carrier under the TMCSR. Although it argues on appeal that it does not meet the Transportation Code definition of "motor carrier," Hays Construction did not raise this contention in its summary judgment motion. Because Hays Construction did not move for summary judgment on this basis, we cannot affirm the trial court's summary judgment on the ground that Hays Construction is not a motor carrier pursuant to the Transportation Code. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex.2002) (citing *Sci. Spectrum, Inc.*, 941 S.W.2d at 912); *see also Morris*, 78 S.W.3d at 39 (holding that, because JTM did not assert in summary judgment motion that it was not interstate motor carrier, appellate court could not consider that contention as basis for affirming summary judgment).

■ With respect to its liability to Martinez as a motor carrier under the Transportation Code, Hays Construction contends that the summary judgment evidence establishes that it exercised no control over the trucks and their drivers, and the only way in which it directed the drivers was by telling them where to deposit the dirt after removing it from the worksite. In his summary judgment affidavit, Philip Hays stated that Hays Construction's only involvement in the hauling process was to "pay[ ] a per trip fee to haul the material to Sprint Sand & Clay." According to Philip Hays, Anderson Dump Trucking, Melendez, and the other truck brokers provided the drivers and dump trucks for the project, and the individual drivers "chose the routes [to Sprint], decided how long to take, how many trips they wanted to make and the number of hours they wanted to work." Hays Construction contends that Martinez presented no evidence that Hays Construction controlled the drivers or directed the oper-

ation of their trucks beyond telling them where to take the dirt removed from Braes Bayou.

Martinez contends that Hays Construction qualifies as a motor carrier under the Transportation Code because it controlled the worksite and was ultimately responsible for hauling the dirt from Braes Bayou. Hays Construction obtained the hauling permits and determined the ultimate location for transporting and unloading the dirt. Hays Construction employees actually loaded each dump truck, checked each driver's license and proof of insurance, and informed each driver where to take the dirt. Hays Construction also indirectly paid the drivers on a per-load basis.

We conclude that, when viewed in the light most favorable to Martinez, Martinez's summary judgment evidence raises a fact issue on whether Hays Construction is a "legal entity that controls, operates, or directs the operation of" the dump trucks used to haul dirt for its Braes Bayou project to Sprint such that it falls within the definition of "motor carrier" in section 643.001(6) of the Transportation Code.

### B. Hays Construction's Liability to Martinez as a "Statutory Employer"

To be vicariously liable for Delfino's negligence, however, Hays Construction must also qualify as Delfino's "statutory employer" under Rule 390.5 of the FMCSR.

The summary judgment evidence is undisputed that Salvador Bello owned the dump truck driven by Delfino at the time of the accident, and Martinez does not contend that Hays Construction leased the truck from Salvador or from Bello Transportation. A motor carrier may, however, still qualify as a statutory employer if it "assigns an employee to operate" a commercial motor vehicle. *See* 49 C.F.R. § 390.5. We have already held that Mar-

tinez presented evidence sufficient to raise a fact issue regarding whether Hays Construction hired Delfino Bello as an independent contractor. Under Rule 390.5, an independent contractor "in the course of operating a commercial motor vehicle" qualifies as an "employee." 49 C.F.R. § 390.5. Neither the FMCSR nor case law defines "assigns." We therefore apply the ordinary meaning of the term. TEX. GOV'T CODE ANN. § 312.002(a) (Vernon 2005). "To assign" means to "appoint as a duty or task." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 74 (11th ed. 2003).

■ Hays Construction presented evidence that it has no control over the route that truck drivers take to Sprint and that it plays no role in requiring independent contractor drivers to operate a particular truck at a particular time. Although an individual driver may decide how many trips to and from Sprint to complete, Martinez presented evidence that when a driver makes a trip, the driver reports to Hays Construction's Braes Bayou worksite, Hays Construction employees check the driver's proof of insurance and license, provide a hauling permit to the driver, load the dump truck, and inform the driver of the destination: Sprint. Upon delivery of the load to Sprint, the driver receives a receipt which he returns to Hays Construction and for which he is paid by Hays Construction.

We conclude that Martinez has provided some evidence that Hays Construction assigns drivers the specific task of operating a dump truck and transporting a load of excavated dirt to Sprint in the truck. We therefore hold that, when the evidence is viewed in the light most favorable to Martinez, Martinez has raised a fact issue regarding whether Hays Construction assigned Delfino Bello to operate the dump truck involved in the accident, and thus she raised a fact issue regarding whether

Hays Construction qualifies as Delfino's "statutory employer" under Rule 390.5.

We hold that the trial court erred in rendering summary judgment on Martinez's TMCSR claim.

We note that some Texas courts have applied a slightly different test to determine statutory employer status. *See John B. Barbour Trucking Co. v. State*, 758 S.W.2d 684, 688 (Tex.App.-Austin 1988, writ denied); *see also Sharpless*, 209 S.W.3d at 829 (applying *Barbour*'s three-part test to determine statutory employer status); *Mata v. Andrews Transp., Inc.*, 900 S.W.2d 363, 366 (Tex.App.-Houston [14th Dist.] 1995, no writ) (same). Under this *"Barbour"* test, a carrier is deemed the statutory employer when (1) the carrier does not own the vehicle, (2) the carrier operated the vehicle under an arrangement with the owner to provide transportation subject to federal regulations, and (3) the carrier does not literally employ the driver. *See Barbour*, 758 S.W.2d at 688. Although the Fort Worth Court of Appeals has not adopted this test, it analyzed the test in *Omega Contracting, Inc. v. Torres* and held that the word "operated" in the second element "connotes control and possession" of the vehicle. 191 S.W.3d 828, 849 (Tex.App.-Fort Worth 2006, no pet.). In *Sharpless*, however, the Dallas Court of Appeals rejected Southwestern Carriers' argument that it was not Sharpless's statutory employer because it did not actually operate the truck; it held that "under the FMCSR it is immaterial who physically operates the truck." 209 S.W.3d at 830. We agree with the Dallas Court of Appeals and note that holding that the *carrier* must "control or possess" the vehicle in order to meet the "operated" element of the *Barbour* test renders the "assigns *an employee to operate* [the vehicle]" option of Rule 390.5's definition of employer mean-

ingless. *See* 49 C.F.R. § 390.5 (emphasis added).

Although we need not address whether to adopt the *Barbour* test as the standard for determining statutory employer status, we note that Martinez has raised a fact issue regarding whether Hays Construction meets each element of the test. Martinez presented evidence that: (1) Hays Construction did not own the dump truck involved in the accident; (2) Hays Construction assigned a statutory employee, Delfino Bello, to operate the truck under an arrangement with the owner, Salvador Bello and Bello Transportation, in hauling dirt on its project; and (3) Hays Construction did not literally employ Delfino. *See Sharpless,* 209 S.W.3d at 829–30 (holding *Barbour* satisfied when Sharpless owned and operated truck and Southwestern, who obtained relevant hauling permits, "operate[d] its business by contracting with truck drivers to haul loads," and thus did not literally employ Sharpless).

We sustain Martinez's second issue.

Because we hold that the trial court erred in granting summary judgment on Martinez's negligent hiring and TMCSR claims, we need not address Martinez's third issue—whether the trial court granted summary judgment on grounds not presented in Hays Construction's summary judgment motion.

### Conclusion

We reverse the judgment of the trial court and remand the case for further proceedings.