Opinion issued May 12, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00593-CV

———————————

Luci Martinez, Individually and as Representative of the Estate of
Luis Martinez, José Martinez,
and Maria Martinez,
Appellants

V.

Hays
Construction, Inc.,
Appellee



 



 

On Appeal from the 190th District Court

Harris County, Texas



Trial Court Case No. 2006-37379

 



 

O P I N I O N

          Appellants,
Luci Martinez, individually and as representative of the estate of Luis
Martinez, José Martinez, and Maria
Martinez (collectively, “Martinez”), sued Hays Construction, Inc. (“Hays
Construction”), alleging claims for negligent hiring, negligence per se, and
vicarious liability under the Texas Motor Carrier Safety Regulations arising
out of a fatal traffic accident between Luis Martinez and Delfino Bello.  The trial court rendered summary judgment in
favor of Hays Construction on all of Martinez’s claims.  In four issues on appeal, Martinez contends
that the trial court erred in (1) rendering summary judgment on her negligent
hiring claim because fact issues exist regarding Hays Construction’s employment
of “unqualified and incompetent independent contractors,” namely Delfino Bello
and Moises Melendez; (2) applying the Texas Motor Carrier Safety
Regulations, which impose statutory vicarious liability on Hays Construction for
Delfino’s negligence; (3) rendering summary judgment on Martinez’s other
negligence-based and punitive damages claims because Hays Construction did not
present these grounds for summary judgment to the trial court; and
(4) admitting the affidavit of Philip Hays (“Hays”), president of Hays
Construction, as summary judgment evidence.

          We
reverse the judgment of the trial court and remand the case for further
proceedings.

Background

          In
2006, Hays Construction contracted with the Harris County Flood Control District
to perform excavation work on Braes Bayou in Houston.  As part of this contract, Hays entered into a
“Material Disposal Agreement” with Sprint Sand & Clay L.P. (“Sprint”) to
provide a location for the dirt excavated and removed from the Braes Bayou worksite.  Hays Construction does not perform its own
hauling services, so it contracted with third parties, including Anderson Dump
Trucking, Inc. and Moises Melendez, to remove the excavated dirt from the
worksite and deliver it to Sprint.[1]

          According
to Philip Hays, the president of Hays Construction, Hays Construction contacted
Anderson, Melendez, and other “truck brokers” and asked them to quote the cost
of hauling materials from the worksite to Sprint.  After the hauling companies provided an
acceptable cost-per-load, Hays Construction contacted the companies each day
and requested their services based on the amount of materials that Hays Construction
needed removed from the site.  Hays Construction
asked each company to haul loads from the Braes Bayou site and contact other
drivers and trucking companies who could also perform hauling services.

          Jessie Frantz, the project manager for
the Braes Bayou excavation, met with Melendez and asked him to haul dirt in his
dump truck.  Melendez provided proof of
insurance, but he did not remember completing official paperwork regarding his
employment and driving history.  In his
deposition, Melendez testified that Frantz told him that, if he knew other
truckers, Melendez could inform them of the hauling opportunities on the Braes
Bayou project.  Frantz did not ask
Melendez to provide Hays Construction a list of the drivers he had contacted or
information regarding their qualifications to drive dump trucks.  Melendez contacted a friend of his, Marcos
Benitez, who informed Salvador Bello, the owner and sole proprietor of Bello
Transportation, of the hauling work at the Braes Bayou site.  Melendez testified that he did not hire
Salvador or Bello Transportation, although Melendez told him the details of the
project when Salvador inquired.

          According to Melendez, the truckers
would line up at the Braes Bayou worksite. 
A Hays Construction employee would ask for their drivers’ licenses and
proof that Hays Construction had been added to their insurance as an additional
insured.  Hays Construction also provided
hauling permits.  A Hays Construction employee
would then load the dump trucks with dirt at the worksite, and the drivers would
deliver the dirt to Sprint.  Melendez
testified that the individual drivers had no control over how much dirt was
loaded into their dump trucks, and the drivers could not request removal of
dirt if they felt that the truck was overloaded.  After the dirt was delivered, a Sprint
employee would give the driver a receipt stating that the driver had completed
one haul.  Salvador Bello gave his
receipts to Melendez and Melendez gave his and Salvador’s receipts to Hays
Construction.  Hays Construction paid
Melendez the agreed cost-per-load amount, and Melendez then paid Salvador the
amount corresponding to the number of hauling trips that Salvador
completed.  Melendez stated that he was
not responsible for Salvador’s work, and he presented Salvador’s hauling
tickets to Hays Construction because Salvador “didn’t do a lot of trips.”  For each receipt that Salvador gave to
Melendez, Melendez kept $2.00 of the payment from Hays Construction.  Melendez paid Salvador with a personal check.  The same procedure was followed with Delfino.

          Salvador testified in his deposition
that he worked with Melendez on the project for two days.  Salvador, who was not sure of the name of the
company that had hired Melendez, told his brother, Delfino, about the details
of the job.  Salvador did not consider
Delfino to be an employee of Bello Transportation, although Delfino testified
that he had worked for Bello Transportation for about two or three months and that
Salvador paid him approximately $100 a week in cash for his services.  Delfino testified that he did not look for
hauling work on his own, but instead only took the jobs that Salvador instructed
him to take.

          Delfino hauled dirt from the Braes
Bayou site for two days without incident. 
On his third hauling trip on the morning of his third day of working,
Delfino collided with Luis Martinez’s car en route to Sprint from the Braes
Bayou worksite.  Luis died from his
injuries, and his family and estate initially sued Delfino, Salvador,
Salvador’s wife Maria, and Bello Transportation (collectively, the “Bello
defendants”).

          In her sixth amended petition, which
alleged causes of action against Melendez and Hays Construction in addition to
the Bello defendants, Martinez alleged that, at the time of the accident,
Delfino was involved in the “course and scope of [his] employment [with] Bello
Transportation, Hays Construction, Inc., and Mr. Moises Melendez.”  Martinez contended that the defendants were
negligent per se by violating sections 544.007, 545.151, and 545.413 of the Texas
Transportation Code, sections 19.04 and 19.05 of the Texas Penal Code, and “the
applicable provisions of the Federal Motor Carrier Safety Regulations as
adopted by the Texas Department of Public Safety.”  Martinez alleged that Hays Construction was
the “statutory employer” of Melendez and the Bello defendants pursuant to
section 390.5 of the Federal Motor Carrier Safety Regulations (“FMCSR”), and
thus Hays Construction was vicariously liable for their negligence.  Martinez also asserted a claim of negligent
hiring, training, control, and supervision against Hays Construction regarding
Melendez and the Bello defendants, because Hays Construction “knew or should
have known that Moises Melendez and the Bello defendants were not skilled, fit,
qualified, or competent to operate the dump truck involved in this case.”  Martinez further alleged that Hays Construction
was “directly negligent” for attempting to delegate the non-delegable duty to
avoid harm to members of the public.  Martinez
sought exemplary damages in addition to actual damages.[2]

          Hays Construction moved for
traditional and no-evidence summary judgment on each of Martinez’s claims
against it.[3]  It contended that all of Martinez’s
negligence-based claims failed because no employer-employee relationship
existed between itself and Delfino.  According
to Philip Hays, Hays Construction never employed Delfino in any capacity,
either as an employee or an independent contractor, and it never had any
contact with Delfino.  Instead,
“[w]ithout relation to Hays [Construction] and without Hays [Construction’s]
knowledge, Melendez recruited, solicited or involved Delfino Bello of Bello
Transportation to assist” Melendez in hauling dirt from the worksite.  Hays averred that Hays Construction did not
“select, control[,] or direct” the drivers that Melendez and Anderson Dump
Trucking provided, and it did not provide dump trucks or take possession and
control over the trucks used to haul dirt. 
Hays Construction “lacked the ability to hire or fire the drivers of the
Bello Transportation truck”; it did not provide any benefits to the truck
drivers; it did not control “the drivers’ route, timing, driving skills or
training”; it did not include Melendez or any of the drivers on its workers’
compensation insurance; and it did not directly pay any of the drivers.  Hays denied that any relationship existed
between Hays Construction and Delfino.

          Hays Construction also contended that
summary judgment was proper on Martinez’s negligence claims because the trial
court had already granted Melendez’s summary judgment motion, ruling as a
matter of law that he was not negligent, and Melendez “was the only link between
Hays [Construction] and Bello.”  Hays Construction
additionally asserted that imputing vicarious liability to it on the basis of
the alleged independent contractor status of Melendez and Delfino was improper
because Hays Construction did not assert any control over Bello Transportation
or Delfino at the time of the accident.

          Hays Construction further argued that
summary judgment was proper under the FMCSR and its Texas counterpart because it
was not the statutory employer of Melendez or the Bello defendants.  Hays Construction denied that it was a “motor
carrier” under the FMCSR because it did not provide “commercial motor vehicle
transportation for compensation” and, therefore, the FMCSR did not apply.  Hays Construction also contended that, even if
the FMCSR did apply, it was not a statutory employer because it did not own or
lease the dump truck driven by Delfino, nor did it assign an employee to
operate the truck.

          Hays Construction also moved for
summary judgment on Martinez’s negligence per se claims, contending that
Martinez could not establish that it had violated any of the statutes
identified in her petition. 
Specifically, because Hays Construction did not operate the truck or
control Delfino, it did not violate the Transportation Code sections.  Hays Construction asserted that it did not
violate the alleged sections of the Penal Code because it did not employ or
control Delfino.  Hays Construction further
contended that Martinez’s claim for punitive damages failed because Martinez
could not recover as a matter of law on the causes of action underlying the
request for punitive damages:  negligence
and negligence per se.

          Hays Construction also moved for
no-evidence summary judgment.  It
contended that Martinez could produce no evidence that it owed a legal duty to
Martinez, that either Delfino or Melendez was an employee of Hays Construction,
that Hays Construction retained control over Delfino and Melendez, that Hays Construction
was a motor carrier or statutory employer under the FMCSR, that it was
vicariously liable under the FMCSR, or that it breached any legal duty that it
may have owed to Martinez.  Regarding the
negligence per se claim, Hays Construction identified each element of the claim
and stated that Martinez could produce no supporting evidence.

          In response, Martinez moved to strike
the affidavit of Philip Hays on the ground that he did not have personal
knowledge of the facts stated in the affidavit. 
The deposition testimony of both Hays and Melendez demonstrated that
Jessie Frantz, Hays Construction’s project manager for the Bares Bayou site,
hired Melendez and that Philip Hays himself never spoke with Melendez.  Martinez therefore contended that “Mr. Hays’
information is likely based on information told to him by Jessie Frantz, who
has not been deposed,” and thus all of the facts included in his affidavit were
“based on hearsay and speculation.”

          Martinez also attached excerpts from
the depositions of Hays and Melendez, and contended that contradictions between
their testimony “creat[ed] fact issues that defeat summary judgment.”  For example, Hays testified that Hays
Construction hired Melendez “as a truck broker,” but Melendez testified that he
was hired as a driver and not a broker.  Hays
also testified that Melendez hired Bello Transportation, but Melendez testified
that, although he called a friend about the project and informed Salvador of
the details of the project, he did not actually hire anyone.  Martinez acknowledged the conflicting
testimony regarding who hired Delfino and argued that, although Hays claimed
Melendez hired Delfino, Melendez stated that he did not hire Delfino, and
Delfino was not sure who hired him, ultimately, “this was Hays [Construction’s]
project and they controlled who was hired and who was fired.”  Martinez contended that a fact issue existed
regarding whether Hays Construction hired Delfino and stated that, “there is no
doubt that Hays Construction was responsible for the persons employed on its
project.”

          Martinez further contended that a fact
issue existed on hiring and control because Hays Construction had the ultimate
responsibility of removing dirt from the bayou; it told “truck brokers” like
Melendez to tell other truck drivers about the hauling opportunities on its
project; it controlled the loading of the dump trucks at the Braes Bayou site;
its employees actually loaded the dump trucks; it checked the truck drivers’ proof
of insurance and licenses; it obtained the hauling permits for the dirt; it
received compensation from the Harris County Flood Control District for hauling
the dirt; it determined the ultimate location for unloading the dirt; and it controlled
who was hired and fired from the project.

          Martinez argued that a fact issue
existed regarding whether Hays Construction negligently hired Melendez as a
“truck broker” because it did not perform a background check on Melendez, it
did not inquire into his qualifications or experience, and it did not require
Melendez to fill out an employment application. 
Melendez and Delfino both admitted in their deposition testimony that
they were not familiar with the Texas and federal motor carrier rules.  As a result, according to Martinez, Hays Construction
was clearly “responsible for the hiring of unqualified persons to fulfill the
duties that [Hays Construction was] ultimately responsible for.”

          Martinez disputed Hays Construction’s
contention that it was not a “motor carrier” and argued that “[i]t is absurd to
think that Hays [Construction] is not a motor carrier when it clearly enters
into multi-million dollar contracts with the
County . . . that specifically require that [it] remove,
haul, and transport material for compensation.” 
Martinez also argued that Hays Construction was a “statutory employer”
because it assigned employees, such as Melendez, “to operate its business and
to assist in the hauling of the dirt, which was ultimately Hays
[Construction’s] responsibility.”

          The trial court overruled Martinez’s
objections to Hays Construction’s summary judgment evidence and rendered
summary judgment in favor of Hays Construction on all of the claims asserted
against it.

Standard of Review

          We
review de novo the trial court’s ruling on a summary judgment motion.  Mann
Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848
(Tex. 2009).  When a party moves for both
traditional and no-evidence summary judgment, and our determination of the
no-evidence summary judgment could make the grounds asserted in the traditional
motion moot, we first review the trial court’s ruling under the no-evidence
standard of review.  Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  If the trial court properly granted the
no-evidence motion, we do not consider the arguments raised regarding the
traditional summary judgment motion.  Id.

          After
an adequate time for discovery, a party may move for no-evidence summary
judgment on the ground that no evidence exists of one or more essential
elements of a claim on which the adverse party bears the burden of proof at
trial.  Tex.
R. Civ. P. 166a(i); Flameout
Design & Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830,
834 (Tex. App.—Houston [1st Dist.] 1999, no pet.).  The burden then shifts to the nonmovant to
produce evidence raising a genuine issue of material fact on the elements
specified in the motion.  Tex. R. Civ. P. 166a(i); Mack Trucks, Inc. v. Tamez, 206 S.W.3d
572, 582 (Tex. 2006).  The trial court
must grant the motion unless the nonmovant presents more than a scintilla of
evidence raising a fact issue on the challenged elements.  Flameout
Design & Fabrication, 994 S.W.2d at 834; see also Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711
(Tex. 1997) (“More than a scintilla of evidence exists when the evidence
supporting the finding, as a whole, ‘rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions.’” (quoting Burroughs Wellcome Co. v. Crye, 907
S.W.2d 497, 499 (Tex. 1995))).  To
determine if the nonmovant has raised a fact issue, we review the evidence in
the light most favorable to the nonmovant, crediting favorable evidence if
reasonable jurors could do so, and disregarding contrary evidence unless
reasonable jurors could not.  See Fielding, 289 S.W.3d at 848 (citing City of Keller v. Wilson, 168 S.W.3d
802, 827 (Tex. 2005)).  We indulge every
reasonable inference and resolve any doubts in the nonmovant’s favor.  Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002) (citing Sci. Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997)).

          To
prevail on a traditional summary judgment motion, the movant must establish
that no genuine issues of material fact exist and that it is entitled to
judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  When, as here, the trial court’s summary
judgment does not state the basis for the court’s decision, we must uphold the
judgment if any of the theories advanced in the motion are meritorious.  Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003).

Admission of Philip Hays’s Affidavit

          In
her fourth issue, Martinez contends that the trial court erred in overruling
her motion to strike Philip Hays’s summary judgment affidavit because the
affidavit was not based on personal knowledge and because Hays’s affidavit
testimony was contradicted by Melendez’s deposition testimony and by this
Court’s opinion in Melendez.  We address this issue before addressing the
merits of the summary judgment.

          We
review a trial court’s decision to admit or exclude summary judgment evidence
for an abuse of discretion.  Paciwest, Inc. v. Warner Alan Props., LLC,
266 S.W.3d 559, 567 (Tex. App.—Fort Worth 2008, pet. denied).  A trial court abuses its discretion if it
acts without reference to any guiding rules or principles.  Carpenter
v. Cimarron Hydrocarbons Corp., 98 S.W.3d 682, 687 (Tex. 2002).  We must uphold the trial court’s ruling if
there is any legitimate basis in the record to support it.  Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).  We will not reverse a trial court for an
erroneous evidentiary ruling unless the error probably caused the rendition of
an improper judgment.  See Tex.
R. App. P. 44.1(a)(1); Wal-Mart
Stores, Inc. v. Johnson, 106 S.W.3d 718, 723 (Tex. 2003).

          Affidavits
supporting a summary judgment motion “shall be made on personal knowledge,
shall set forth such facts as would be admissible in evidence, and shall show
affirmatively that the affiant is competent to testify to the matters stated
therein.”  Tex. R. Civ. P. 166a(f). 
A corporate officer may testify to facts regarding corporate
activities.  See Exito Elecs. Co. v. Trejo, 99 S.W.3d 360, 372 (Tex. App.—Corpus
Christi 2003) (“[W]ith regard to the personal knowledge of corporate
representatives, officers such as vice-presidents, secretaries, and board
presidents may testify to facts regarding the corporation’s activities.”), rev’d on other grounds, 142 S.W.3d 302 (Tex. 2004); see also Waite v. BancTexas-Houston, N.A.,
792 S.W.2d 538, 540 (Tex. App.—Houston [1st Dist.] 1990, no writ) (holding
summary judgment affidavit admissible, even though officer not employed with
bank at time of relevant events, because officer able to gain knowledge of
facts testified to during employment and officer’s statement of current
position demonstrated how he gained personal knowledge of particular
sale).  Even if an affiant later explains
that his affidavit testimony was based on his review of corporate business
records, the affiant’s “acknowledgement of the sources from which he gathered
his knowledge does not violate the personal knowledge requirement.”  In re
E.I. DuPont de Nemours & Co., 136 S.W.3d 218, 224 (Tex. 2004); Asshauer v. Glimcher Realty Trust, 228
S.W.3d 922, 926 (Tex. App.—Dallas 2007, no pet.).

          Here,
Philip Hays is the president of Hays Construction.  Although Hays acknowledged in his deposition
that he did not meet with Melendez before the company hired him to work on the
Braes Bayou project, it is not unreasonable to assume that Jessie Frantz, the
project manager for Hays Construction who hired Melendez, informed Hays of
their meeting and the circumstances in which Frantz hired Melendez before Hays
made his affidavit for this case.  The
mere fact that Hays did not personally hire Melendez or involve himself in the
day-to-day operation of Hays Construction’s Braes Bayou project, but instead
gathered his knowledge about the project from other corporate sources at Hays
Construction for the purpose of completing his affidavit, does not violate the
personal knowledge requirement.  See In re DuPont, 136 S.W.3d at 224.

          On
appeal, Martinez argues that the trial court should have struck Hays’s
affidavit because, although Hays averred that Melendez recruited Bello
Transportation, Hays testified in his deposition that Melendez was a “truck
broker” responsible for hauling and arranging for hauling of the dirt.  Furthermore, Melendez disputed this fact in
his deposition, and this Court agreed with Melendez by finding that Melendez
was a “referring driver” and not a “truck broker.”

          In Melendez, however, we discounted the
relevance of the “truck broker” and “referring driver” distinction, and noted
that, in determining Melendez’s liability, the issue was whether Melendez
exercised control over the details of Delfino’s work, and not how Hays Construction
labeled the relationship between the parties. 
Martinez v. Melendez, No.
01-08-00850-CV, 2009 WL 4357794, at *3 (Tex. App.—Houston [1st Dist.] Dec. 3,
2009, pet. denied) (mem. op.). 
Furthermore, Martinez provides no authority for why the contradiction
between the testimony of Melendez and Philip Hays over what, precisely, Hays Construction
hired Melendez to do and the particular label to be applied to Melendez
constitutes a basis for striking Philip Hays’s affidavit as summary judgment
evidence.  We therefore hold that
Martinez has failed to demonstrate that the trial court abused its discretion
in admitting Hays’s affidavit.

          We
overrule Martinez’s fourth issue.

Negligent Hiring

          In
her first issue, Martinez contends that the trial court erred in rendering
summary judgment in favor of Hays Construction because fact issues exist
regarding whether it negligently hired “unqualified and incompetent independent
contractors.”

The sole argument Hays Construction
made in its summary judgment motion on the issue of negligent hiring was that
it could not be liable for any of Martinez’s negligence-based claims because no
relationship existed between Hays Construction and Delfino—Hays Construction never hired Delfino either as
an employee or as an independent contractor. 
Therefore, it had no legal duty to protect Luis Martinez from Delfino’s
actions.  On appeal, Martinez argues that
she raised a fact issue regarding who hired Delfino because “Hays Construction
claims Mr. Melendez hired Mr. [Delfino] Bello. 
Mr. Melendez states that he did not hire Mr. [Delfino] Bello.  Mr. Bello states that he is not sure who
hired him.”  In first issue on appeal,
Martinez also contends, as she did below, that, in addition to negligently
hiring Delfino as a driver, Hays Construction negligently hired Melendez to act
as a “truck broker” because Melendez was not qualified to act in this capacity.

          To successfully prosecute a
claim of negligent hiring, Martinez must demonstrate that (1) Hays Construction
owed a legal duty to protect Luis Martinez from Delfino’s or Melendez’s actions
and (2) Luis sustained damages proximately caused by Hays Construction’s breach
of that legal duty.  See Thomas v. CNC Invs., L.L.P., 234 S.W.3d 111, 123 (Tex.
App.—Houston [1st Dist.] 2007, no pet.); see
also TXI Transp. Co. v. Hughes, 306 S.W.3d 230, 240 (Tex. 2010) (“In a
negligent-hiring or negligent-entrustment claim, a plaintiff must show that the
risk that caused the entrustment or hiring to be negligent also proximately
caused plaintiff’s injuries.”).

The duty of the employer extends
only to prevent the employee or independent contractor from causing physical
harm to a third party.  Wrenn v. G.A.T.X. Logistics, Inc., 73
S.W.3d 489, 496 (Tex. App.—Fort Worth 2002, no pet.); see also Mireles v. Ashley, 201 S.W.3d 779, 782 (Tex. App.—Amarillo
2006, no pet.) (applying negligent hiring principles to independent contractor
and stating that employer must use ordinary care in hiring contractor).  The employer owes a duty to the general
public to ascertain the qualifications and competence of the employees and
independent contractors it hires, “especially when the employees are engaged in
occupations that require skill or experience and that could be hazardous to the
safety of others.”  Morris v. JTM Materials, Inc., 78 S.W.3d 28, 49 (Tex. App.—Fort
Worth 2002, no pet.).  Thus, an employer
is liable for negligent hiring if it “hires an incompetent or unfit employee
whom it knows, or by the exercise of reasonable care should have known, was
incompetent or unfit, thereby creating an unreasonable risk of harm to
others.”  Id.

The plaintiff must demonstrate that
the employer’s hiring of the allegedly incompetent employee or independent
contractor proximately caused the plaintiff’s injuries.  See
Thomas, 234 S.W.3d at 123; Morris,
78 S.W.3d at 49.  The proximate cause
element of a negligent hiring claim consists of cause in fact and
foreseeability.  Thomas, 234 S.W.3d at 123 (citing Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477
(Tex. 1995)).  A plaintiff establishes
cause in fact if she demonstrates that the negligent act or omission was a
substantial factor in bringing about the injury, without which the harm would
not have occurred.  Id. (citing Prudential Ins.
Co. v. Jefferson Assocs., Ltd., 896 S.W.2d 156, 161 (Tex. 1995)).  Cause in fact is not shown if the defendant’s
negligence did no more than furnish a condition which made the injury
possible.  Doe, 907 S.W.2d at 477.

If the performance of the
employment contract requires driving a vehicle, the employer has an affirmative
duty to investigate the employee or independent contractor’s competency to
drive.  Mireles, 201 S.W.3d at 782–83; Morris,
78 S.W.3d at 49.  An employer is not
negligent when there is nothing in the employee’s background that would cause a
reasonable employer not to hire or retain the employee.  Dangerfield
v. Ormsby, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet.); Ogg v. Dillard’s, Inc., 239 S.W.3d 409,
421 (Tex. App.—Dallas 2007, pet. denied); see
also Mireles, 201 S.W.3d at 783 (“However, Ashley could not know that West
was an incompetent driver unless West was, in fact, an incompetent driver.”); Wasson v. Stracener, 786 S.W.2d 414, 422
(Tex. App.—Texarkana 1990, writ denied) (“Even if Stracener were found to have
been negligent in his manner of selecting Freeman, [failure to check Freeman’s
driving record] would not create liability unless there was also evidence that
Freeman was incompetent.”).

A.  
Hays Construction’s Negligent Hiring
of Melendez

In one sub-issue, Martinez argues
that she raised a fact issue on Hays Construction’s negligent hiring of
Melendez as a broker to find drivers to haul dirt from its Braes Bayou worksite.  Hays Construction argued in its summary
judgment motion, and argues in response to Martinez’s sub-issue on appeal,
that, without its knowledge, Melendez “recruited, solicited, or involved”
Delfino to assist him in hauling dirt from the worksite and that it did not
“select, control[,] or direct” the drivers Melendez provided for the site.  Therefore, as Melendez “was the only link
between Hays [Construction] and Bello,” Hays Construction’s hiring of Melendez
could not have proximately caused Martinez’s death.

In our previous opinion in Melendez, we affirmed the trial court’s
summary judgment dismissing Martinez’s wrongful death negligence claims against
Melendez.  Melendez, 2009 WL 4357794, at *4. 
We observed in that opinion that, at the time of the accident, Melendez
“worked at the Hays [Construction] site[] hauling dirt in his own truck.”  Id.
at *1.  We stated:

According to the summary
judgment record, when Hays [Construction] needed a dump truck driver to haul
dirt from a site, a representative contacted an independent truck driver,
usually one who has worked on previous projects for Hays [Construction],
discussed the project and asked the driver to haul loads and to refer other
drivers.  That driver, in turn, contacts
other drivers, each of whom uses his own truck to haul loads of dirt.  Hays [Construction] checks the drivers’ proof
of insurance when they arrive at the work site. 
Hays [Construction] also provides hauling permits for the drivers.

 

          The referring driver does not supervise the other drivers
he brings to the project, but instead collects tickets from each driver at the
end of the week documenting the number of hauls made by that driver.  Then, he adds them, includes his own haul
numbers, and provides the total to Hays [Construction].  Hays [Construction] issues one check to the
referring driver, who then divides the money among the drivers according to the
number of hauls made by each.

 

          In this instance, when Hays [Construction] asked Melendez
if he could refer other drivers to work on the excavation project, Melendez
contacted a driver he knew named Marcos Benitez.  Benitez, in turn, contacted Salvador to
inform him of the available job and of Melendez’s telephone number.

 

. . . .

 

          Salvador called Melendez, who described the Hays [Construction
Braes Bayou] project.  Salvador reported
to the Hays [Construction] site with Melendez and began hauling the dirt.  Melendez and Salvador each prepared trip
tickets, which Melendez submitted to Hays [Construction] for payment.  After receiving the payment from Hays [Construction],
Melendez wrote a personal check, made payable to Salvador, individually, to
give Salvador his share.

 

. . . .

 

          One week, after learning of the job from Salvador, Delfino
reported to work at the Hays [Construction Braes Bayou] site.

 

Melendez, 2009 WL 4357794, at *1–2.

 

To successfully maintain a claim
against Hays Construction for negligently hiring Melendez, Martinez would have
to prove that Hays Construction’s negligent hiring of Melendez as a truck
broker proximately caused Martinez’s injuries, i.e., that Martinez’s injuries from
the crash with Delfino were foreseeable from Hays Construction’s negligent
hiring of Melendez and would not have occurred but for that act of negligence. See Thomas, 234 S.W.3d at 123.  We have previously held, however, that
Melendez was not Delfino’s employer.  Melendez, 2009 WL 4357794, at *4.  We noted that the summary judgment evidence
reflected that Melendez—who had
spoken with Salvador Bello about the job, had handed in Salvador’s trip
receipts to Hays Construction, and had only had contact with Salvador—was unaware that Delfino Bello was driving the
Bello Transportation truck.  Id. 
Instead, Salvador had informed Delfino about the work at the Hays Construction
Braes Bayou site, which Salvador had heard about through Melendez.  Id.  The evidence demonstrated that Melendez had
no control over the details of Delfino’s work and had no authority to hire or
fire Delfino.  Id.  We concluded that “no
general employer-employee relationship exist[ed]” between Melendez and Delfino
to impose either vicarious liability under a respondeat superior theory or
direct liability under a negligent hiring theory on Melendez as a result of
Delfino’s actions.  Id.

In the present suit, Martinez
presented no evidence that Melendez referred Delfino to Hays Construction for
the hauling work.

We conclude, therefore, that
Martinez cannot establish that the decision by Hays Construction to hire
Melendez as a truck broker proximately caused the injuries to Luis
Martinez.  We hold that the trial court
correctly rendered summary judgment on Martinez’s claim against Hays Construction
for negligently hiring Melendez as a truck broker.

We overrule this sub-part of Martinez’s
first issue.

B.  
Hays Construction’s Negligent Hiring
of Delfino

          In a
second sub-issue, Martinez argues, and Hays Construction agrees, that all of
Hays Construction’s arguments in its summary judgment motion regarding Martinez’s
negligence-based claims turn on the non-existence of a duty owed to Martinez by
Hays Construction due to Hays Construction’s not having hired Delfino.   Martinez argues that she has raised a fact
issue with respect to Hays Construction’s hiring of Delfino as an independent contractor,
and, therefore, she has raised a fact issue with respect to each of her
negligence-based claims.

          Martinez
presented summary judgment evidence that, as part of its contractual
obligations to the Harris County Flood Control District, Hays Construction determined
that the dirt would be removed from the Braes Bayou worksite and taken to
Sprint.  Hays Construction bore the
ultimate responsibility for removing the dirt from the worksite, and it
obtained the earth hauling permits necessary for transporting the dirt to
Sprint.  According to the deposition
testimony of Philip Hays, the president of Hays Construction, Hays
Construction’s project manager, Jessie Frantz, hired Melendez as a truck broker
to obtain drivers for the worksite. 
Melendez stated that Frantz told him that if he knew other truck
drivers, he could inform them that hauling opportunities were available as part
of the project.  The parties agreed that truck
drivers would report to the Hays Construction Braes Bayou worksite for work
hauling dirt from the worksite to the Sprint site.  Hays Construction employees checked each
driver’s license and proof of insurance before the driver left the worksite to
haul the dirt to Sprint.  The parties
also agreed that the drivers were required to list Hays Construction as an
additional insured on their insurance. 
Melendez testified that Hays Construction employees loaded each dump
truck at the worksite, and the individual drivers had no control in determining
the amount of dirt loaded into the trucks or in determining the place to which
the dirt was to be delivered—Sprint.  Sprint issued receipts upon delivery to it of
dirt from the Hays Construction Braes Bayou worksite.  Melendez turned in the Sprint receipts for
Salvador, Delfino, and himself to Hays Construction, and Hays Construction paid
Melendez on a per-load basis.  Melendez,
in turn, paid Delfino the amount of money received from Hays Construction for
Delfino’s delivery of each load of dirt to Sprint, minus a $2.00 fee on each
load delivered.  Philip Hays, in his
deposition, stated that Hays Construction could fire drivers if they were not completing
their jobs.

Viewing the evidence in the light
most favorable to Martinez, we hold that Martinez raised a fact issue regarding
whether Hays Construction hired Delfino Bello as an independent contractor to
haul dirt from the Hays Construction Braes Bayou worksite to Sprint.

We sustain Martinez’s first issue.

Liability under Texas Motor Carrier Safety Regulations

          In
her second issue, Martinez contends that the trial court incorrectly applied
the Texas Motor Carrier Safety Regulations (“TMCSR”) because Hays Construction is
both a “motor carrier” and a “statutory employer” under the TMCSR and,
therefore, is vicariously liable for Delfino’s negligence.

          Historically,
interstate motor carriers have attempted to immunize themselves from liability
for negligent drivers by leasing trucks and classifying the drivers as
independent contractors.  Sharpless v. Sim, 209 S.W.3d 825, 829
(Tex. App.—Dallas 2006, pet. denied); Morris,
78 S.W.3d at 37.  In response, Congress
amended the Interstate Common Carrier Act to “require interstate motor carriers
to assume full direction and control of the vehicles that they leased ‘as if
they were the owners of such vehicles.’” 
Morris, 78 S.W.3d at 38
(quoting Price v. Westmoreland, 727
F.2d 494, 495–96 (5th Cir. 1984)).  The
goal of the amendments was to “ensure that interstate motor carriers would be
fully responsible for the maintenance and operation of the leased equipment and
the supervision of the borrowed drivers . . . .”  Id.  To effectuate the purposes of the Interstate
Common Carrier Act, the Interstate Commerce Commission promulgated the Federal
Motor Carrier Safety Regulations (“FMCSR”) which, among other requirements,
impose vicarious liability upon interstate motor carriers for the negligence of
their statutory employee drivers.  Id. at 38–39.

          The
Texas Department of Public Safety has adopted a majority of the FMCSR.  37 Tex.
Admin. Code § 4.11(a) (2010) (Tex. Dep’t of Pub. Safety, Gen.
Applicability & Definitions).

          Among
the definitions adopted were the definitions of “statutory employer” and
“statutory employee” set out in Rule 390.5 of the FMCSR.  The FMCSR define “employer” as “any person
engaged in a business affecting interstate commerce who owns or leases a
commercial motor vehicle in connection with that business, or assigns employees
to operate it . . . .” 
Federal Motor Carrier Safety Regulations, 49 C.F.R. § 390.5
(2009).  An “employee” is “any
individual, other than an employer, who is employed by an employer and who in
the course of his or her employment directly affects commercial motor vehicle
safety.”[4]  Id.  This definition includes an independent
contractor “while in the course of operating a commercial motor vehicle.”  Id.;
see also Consumers Cnty. Mut. Ins. Co. v.
P.W. & Sons Trucking, Inc., 307 F.3d 362, 364–66 (5th Cir. 2002) (observing
that Motor Carrier Safety Act eliminated distinction between employees and
independent contractors); Sharpless,
209 S.W.3d at 830 (rejecting carrier’s argument that driver was not statutory
employee because he was independent contractor).  A motor carrier is vicariously liable for the
negligence of its “statutory employee” drivers. 
See Morris, 78 S.W.3d at 39; Sharpless, 209 S.W.3d at 829.

In adopting the FMCSR, however, the
Department of Public Safety specified that, instead of using the federal
definition in the FMCSR, as it did in defining “statutory employer,” “the
definition of motor carrier will be the same as that given in Texas
Transportation Code, § 643.001(6) when vehicles operated by the motor
carrier meet the applicability requirements of subsection (c) of this section.”[5]  37 Tex.
Admin. Code § 4.11(b)(1). 
The Transportation Code defines “motor carrier” as “an individual,
association, corporation, or other legal entity that controls, operates, or
directs the operation of one or more vehicles that transport persons or cargo
over a road or highway in this state.”[6]  Tex.
Transp. Code Ann. § 643.001(6) (Vernon Supp. 2010).

A.  
Hays Construction’s Liability to
Martinez as a Motor Carrier

Hays Construction moved for both
traditional and no-evidence summary judgment on the ground that it does not
qualify as a “motor carrier” under the FMCSR. 
It did not argue that it did not qualify as a motor carrier under the
TMCSR.  Although it argues on appeal that
it does not meet the Transportation Code definition of “motor carrier,” Hays Construction
did not raise this contention in its summary judgment motion.  Because Hays Construction did not move for
summary judgment on this basis, we cannot affirm the trial court’s summary
judgment on the ground that Hays Construction is not a motor carrier pursuant
to the Transportation Code.  See Johnson v. Brewer & Pritchard, P.C.,
73 S.W.3d 193, 204 (Tex. 2002) (citing Sci.
Spectrum, Inc., 941 S.W.2d at 912); see
also Morris, 78 S.W.3d at 39 (holding that, because JTM did not assert in
summary judgment motion that it was not interstate motor carrier, appellate
court could not consider that contention as basis for affirming summary
judgment).

          With
respect to its liability to Martinez as a motor carrier under the
Transportation Code, Hays Construction contends that the summary judgment
evidence establishes that it exercised no control over the trucks and their
drivers, and the only way in which it directed the drivers was by telling them
where to deposit the dirt after removing it from the worksite.  In his summary judgment affidavit, Philip
Hays stated that Hays Construction’s only involvement in the hauling process
was to “pay[] a per trip fee to haul the material to Sprint Sand &
Clay.”  According to Philip Hays,
Anderson Dump Trucking, Melendez, and the other truck brokers provided the
drivers and dump trucks for the project, and the individual drivers “chose the
routes [to Sprint], decided how long to take, how many trips they wanted to
make and the number of hours they wanted to work.”  Hays Construction contends that Martinez
presented no evidence that Hays Construction controlled the drivers or directed
the operation of their trucks beyond telling them where to take the dirt removed
from Braes Bayou.

          Martinez
contends that Hays Construction qualifies as a motor carrier under the
Transportation Code because it controlled the worksite and was ultimately
responsible for hauling the dirt from Braes Bayou.  Hays Construction obtained the hauling
permits and determined the ultimate location for transporting and unloading the
dirt.  Hays Construction employees
actually loaded each dump truck, checked each driver’s license and proof of insurance,
and informed each driver where to take the dirt.  Hays Construction also indirectly paid the
drivers on a per-load basis.

We conclude that, when viewed in
the light most favorable to Martinez, Martinez’s summary judgment evidence
raises a fact issue on whether Hays Construction is a “legal entity that
controls, operates, or directs the operation of” the dump trucks used to haul
dirt for its Braes Bayou project to Sprint such that it falls within the
definition of “motor carrier” in section 643.001(6) of the Transportation Code.

 

 

 

B.  
Hays Construction’s Liability to
Martinez as a “Statutory Employer”

          To be
vicariously liable for Delfino’s negligence, however, Hays Construction must
also qualify as Delfino’s “statutory employer” under Rule 390.5 of the FMCSR.

          The
summary judgment evidence is undisputed that Salvador Bello owned the dump
truck driven by Delfino at the time of the accident, and Martinez does not
contend that Hays Construction leased the truck from Salvador or from Bello
Transportation.  A motor carrier may,
however, still qualify as a statutory employer if it “assigns an employee to
operate” a commercial motor vehicle.  See 49 C.F.R. § 390.5.  We have already held that Martinez presented
evidence sufficient to raise a fact issue regarding whether Hays Construction hired
Delfino Bello as an independent contractor. 
Under Rule 390.5, an independent contractor “in the course of operating
a commercial motor vehicle” qualifies as an “employee.”  49 C.F.R. § 390.5.  Neither the FMCSR nor case law defines
“assigns.”  We therefore apply the
ordinary meaning of the term.  Tex. Gov’t Code Ann. § 312.002(a)
(Vernon 2005).  “To assign” means to
“appoint as a duty or task.”  Merriam-Webster’s Collegiate Dictionary 74 (11th
ed. 2003).

          Hays Construction
presented evidence that it has no control over the route that truck drivers
take to Sprint and that it plays no role in requiring independent contractor
drivers to operate a particular truck at a particular time.  Although an individual driver may decide how
many trips to and from Sprint to complete, Martinez presented evidence that
when a driver makes a trip, the driver reports to Hays Construction’s Braes
Bayou worksite, Hays Construction employees check the driver’s proof of insurance
and license, provide a hauling permit to the driver, load the dump truck, and
inform the driver of the destination: 
Sprint.  Upon delivery of the load
to Sprint, the driver receives a receipt which he returns to Hays Construction
and for which he is paid by Hays Construction.

We conclude that Martinez has provided
some evidence that Hays Construction assigns drivers the specific task of
operating a dump truck and transporting a load of excavated dirt to Sprint in
the truck.  We therefore hold that, when
the evidence is viewed in the light most favorable to Martinez, Martinez has raised
a fact issue regarding whether Hays Construction assigned Delfino Bello to
operate the dump truck involved in the accident, and thus she raised a fact
issue regarding whether Hays Construction qualifies as Delfino’s “statutory
employer” under Rule 390.5.

We hold that the trial court erred
in rendering summary judgment on Martinez’s TMCSR claim.

          We note that some Texas courts have
applied a slightly different test to determine statutory employer status.  See
John B. Barbour Trucking Co. v. State, 758 S.W.2d 684, 688 (Tex.
App.—Austin 1988, writ denied); see also
Sharpless, 209 S.W.3d at 829 (applying Barbour’s
three-part test to determine statutory employer status); Mata v. Andrews Transp., Inc., 900 S.W.2d 363, 366 (Tex. App.—Houston
[14th Dist.] 1995, no writ) (same). 
Under this “Barbour” test, a
carrier is deemed the statutory employer when (1) the carrier does not own the
vehicle, (2) the carrier operated the vehicle under an arrangement with
the owner to provide transportation subject to federal regulations, and (3) the
carrier does not literally employ the driver. 
See Barbour, 758 S.W.2d at
688.  Although the Fort Worth Court of
Appeals has not adopted this test, it analyzed the test in Omega Contracting, Inc. v. Torres and held that the word “operated”
in the second element “connotes control and possession” of the vehicle.  191 S.W.3d 828, 849 (Tex. App.—Fort Worth
2006, no pet.).  In Sharpless, however, the Dallas Court of Appeals rejected
Southwestern Carriers’ argument that it was not Sharpless’s statutory employer
because it did not actually operate the truck; it held that “under the FMCSR it
is immaterial who physically operates the truck.”  209 S.W.3d at 830.  We agree with the Dallas Court of Appeals and
note that holding that the carrier
must “control or possess” the vehicle in order to meet the “operated” element
of the Barbour test renders the
“assigns an employee to operate [the
vehicle]” option of Rule 390.5’s definition of employer meaningless.  See
49 C.F.R. § 390.5 (emphasis added).

Although we need not address whether to adopt the Barbour test as the standard for
determining statutory employer status, we note that Martinez has raised a fact
issue regarding whether Hays Construction meets each element of the test.  Martinez presented evidence that:  (1) Hays Construction did not own the dump
truck involved in the accident; (2) Hays Construction assigned a statutory
employee, Delfino Bello, to operate the truck under an arrangement with the
owner, Salvador Bello and Bello Transportation, in hauling dirt on its project;
and (3) Hays Construction did not literally employ Delfino.  See
Sharpless, 209 S.W.3d at 829–30 (holding Barbour satisfied when Sharpless owned and operated truck and Southwestern,
who obtained relevant hauling permits, “operate[d] its business by contracting
with truck drivers to haul loads,” and thus did not literally employ
Sharpless).

          We
sustain Martinez’s second issue.

          Because
we hold that the trial court erred in granting summary judgment on Martinez’s
negligent hiring and TMCSR claims, we need not address Martinez’s third issue—whether the trial court granted summary
judgment on grounds not presented in Hays Construction’s summary judgment
motion.




 

Conclusion

          We
reverse the judgment of the trial court and remand the case for further
proceedings.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Bland.

 

 











[1]
          Martinez sued Melendez for the
same causes of action asserted against Hays. 
In a previous appeal, this Court held that no employer-employee
relationship existed between Melendez and Delfino Bello, and, therefore, the
trial court correctly rendered summary judgment in favor of Melendez on
Martinez’s negligent hiring and Texas Motor Carrier Safety Regulations claims
against him.  See Martinez v. Melendez, No. 01-08-00850-CV, 2009 WL 4357794, at
*4 (Tex. App.—Houston [1st Dist.] Dec. 3, 2009, pet. denied) (mem. op.).

 





[2]
          Martinez also asserted a claim
for joint enterprise liability, which Hays Construction challenged in its
summary judgment motion.  Martinez does
not challenge the trial court’s rendition of summary judgment on this claim on
appeal.

 





[3]
          As summary judgment evidence,
Hays Construction attached the affidavit of Philip Hays, excerpts from the
depositions of Delfino and Salvador Bello, and discovery responses from
Melendez.





[4]
          To the extent Martinez contends
that Bello Transportation is a “statutory employee” of Hays Construction, we
note that Rule 390.5 specifically defines “employee” as “any individual.”  See
Federal Motor Carrier Safety Regulations, 49 C.F.R. § 390.5 (2009).  “Employer,” meanwhile, is defined as “any
person,” which is further defined as “any individual, partnership, association,
corporation, business trust, or any other organized group of individuals.”  Id.  Under a plain reading of Rule 390.5,
therefore, Bello Transportation, a sole proprietorship, cannot be an
employee.  See Ill. Bulk Carrier, Inc. v. Jackson, 908 N.E.2d 248, 255–56
(Ind. Ct. App. 2009); see also Brown v.
Truck Connections Int’l, Inc., 526 F. Supp. 2d 920, 925 (E.D. Ark. 2007)
(noting language difference between “employee” and “employer” definitions
suggests that “individual” refers to “human beings and not to corporations or
other legal persons”).

 





[5]
          Rule 390.5 of the FMCSR defines
“motor carrier” as “a for-hire motor carrier or a private motor carrier.”  49 C.F.R. § 390.5 (2009).  The rule further defines “for-hire motor
carrier” as “a person engaged in the transportation of goods or passengers for
compensation” and defines “private motor carrier” as “a person who provides
transportation of property or passengers, by commercial motor vehicle, and is
not a for-hire motor carrier.”  Id. 
Martinez does not argue that Hays Construction qualifies as a motor
carrier under the FMCSR—merely
that it qualifies under the Transportation Code definition.

 





[6]
          No case law exists interpreting
this definition of “motor carrier.”  The
previous definition, article 911b of the Revised Civil Statutes, defined motor
carrier as any legal entity or person that operates or owns “any
motor-propelled vehicle used in transporting property for compensation or hire
over any public highway in this state . . . .”  See
R.R. Comm’n of Tex. v. Waste Mgmt. of Tex., Inc., 880 S.W.2d 835, 838 (Tex.
App.—Austin 1994, no writ); All Star Van
& Storage v. Admiral Storage & Van, Inc., 658 S.W.2d 213, 215 (Tex.
App.—El Paso 1983, writ ref’d) (“Under 911b, a motor carrier is one using the
highways between incorporated cities ‘transporting property for compensation or
hire’—the property
of others.”).