

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-11-00851-CV

Richard **CASTILLO** and Patsy Castillo,
Appellants

v.

**GULF COAST LIVESTOCK MARKET, L.L.C.**,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 10-03-48841-DV
Honorable Richard C. Terrell, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  December 19, 2012

AFFIRMED

This is an appeal from a take-nothing judgment on claims filed by Richard Castillo and

his wife, Patsy Castillo, against Gulf Coast Livestock Market, L.L.C. Castillo was injured when a

tractor trailer backed into him on Gulf Coast's premises. The Castillos brought claims against

Gulf Coast for premises liability, negligent hiring of the driver of the tractor trailer, and

negligence. Gulf Coast filed three summary judgment motions, which together addressed all of

the claims brought by the Castillos. The trial court granted all of Gulf Coast's summary

judgment motions, and rendered final judgment that the Castillos take nothing on their claims.

On appeal, the Castillos argue the trial court erred in granting summary judgment on their negligence and negligent hiring claims, and in excluding the affidavit of their expert witness. We affirm the trial court's judgment.

## BACKGROUND

Gulf Coast is in the business of brokering the sale of livestock. It operates a livestock auction barn in Alice, Texas. Ninety-percent of Gulf Coast's business involves selling animals that are transported to the auction barn by their owners.

Castillo is an animal inspector, employed by the Texas Animal Commission.

On August 5, 2008, Castillo was injured on Gulf Coast's premises when a tractor trailer loaded with cattle backed into him. Gulf Coast did not own the tractor trailer. The tractor trailer was driven by Charles W. Hellen, III, who was not a Gulf Coast employee. Hellen did not own the tractor trailer, nor did he own the cattle in the tractor trailer. The cattle in the tractor trailer, owned by someone who is not a party to this case, were being delivered to the auction barn for sale. The accident occurred when Hellen was backing the tractor trailer into a designated area for unloading by Gulf Coast employees.

The Castillos sued Gulf Coast for premises liability, negligence, and negligent hiring. After answering the suit and conducting discovery, Gulf Coast filed three summary judgment motions. The first summary judgment motion addressed the Castillos' premises liability claim. The trial court granted the first summary judgment motion. This ruling is not challenged on appeal.

The second summary judgment motion addressed both the Castillos' negligence and negligent hiring claims. In this motion, which was both a traditional and no evidence summary judgment motion, Gulf Coast asserted the Castillos could not recover on their negligent hiring

claim because (1) Gulf Coast did not hire Hellen and therefore it owed no duty to the Castillos, and (2) there was no evidence that Gulf Coast hired Hellen on the day of the accident. Attached to its second summary judgment motion was the affidavit of Gulf Coast managing owner, David Shelton. In the affidavit, Shelton testified as follows:

> On the date of the accident I had an agreement with Freddie Moore to distribute a portion of the proceeds from the sale of livestock in exchange for his delivery of livestock to Gulf Coast Livestock Market. On the date of the accident I expected Freddie Moore to deliver the livestock to Gulf Coast Livestock Market. I did not know that Mr. Moore had hired Charles Hellen to deliver the cattle on that day. Gulf Coast Livestock Market had no written agreement with Charles Hellen and did not hire him. Gulf Coast Livestock Market is not involved in the business of transporting livestock. Neither myself nor Gulf Coast Livestock Market were involved in hiring, or the decision to hire, Charles Hellen.

Alternatively, Gulf Coast argued in its second summary judgment motion that the Castillos' negligence and negligent hiring claims were foreclosed because there was no evidence of proximate cause.

The third summary judgment motion addressed the Castillos' negligence claim, which was based on a vicarious liability theory. The Castillos alleged Gulf Coast was liable for Hellen's negligence because, even if Gulf Coast did not literally employ Hellen, Gulf Coast was liable because it was a motor carrier and Hellen was its statutory employee. In this motion, which was a no-evidence summary judgment motion, Gulf Coast alleged there was no evidence it was a motor carrier as that term is defined in section 643.001(6) of the Texas Transportation Code.

The Castillos filed responses to the second and third summary judgment motions, and attached evidence to these responses. The Castillos' evidence included Hellen's deposition testimony, Gulf Coast's bookkeeping records, and an expert witness affidavit. Gulf Coast objected to the expert witness affidavit, arguing the expert was not qualified to offer legal conclusions, and his testimony was conclusory and unreliable. The trial court sustained these

objections, and excluded the expert witness's affidavit. Thereafter, the trial court granted Gulf Coast's second and third summary judgment motions, and rendered judgment that the Castillos take nothing on their claims. The Castillos appealed.

### NO-EVIDENCE SUMMARY JUDGMENT STANDARD

After an adequate time for discovery, a party who does not have the burden of proof at trial, may move for a no-evidence summary judgment on the ground that there is no evidence of one or more essential elements of the respondent's claim or defense. TEX. R. CIV. P. 166a(i). After a no-evidence summary judgment motion is filed, the burden shifts to the respondent to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). "The [trial] court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a(i). Appellate courts affirm a no-evidence summary judgment when (1) there is a complete absence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

### NEGLIGENCE CLAIM

The Castillos argue the trial court erred in granting summary judgment as to their negligence claim because Gulf Coast was Hellen's statutory employer and therefore was vicariously liable for Hellen's negligent conduct. Statutory employment is a theory of vicarious liability created by the Federal Motor Carrier Safety Regulations (FMCSR). *Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 848 (Tex. App.—Fort Worth 2006, no pet.). Under the FMCSR,

a "motor carrier" is vicariously liable for the negligence of its "statutory employee" drivers. *Martinez v. Hays Constr., Inc.*, 355 S.W.3d 170, 184 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Tamez v. S.W. Motor Transp., Inc.*, 155 S.W.3d 564, 573 (Tex. App.—San Antonio 2005, no pet.); *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 43 (Tex. App.—Fort Worth 2002, no pet.).

The Texas Department of Public Safety has adopted a majority of the FMCSR. 37 TEX. ADMIN. CODE § 4.11(a) (2012). The FMCSR defines an "employee" as "including an independent contractor while in the course of operating a commercial motor vehicle." *Id.*; 49 C.F.R. § 390.5 (2012). In addition, the FMCSR defines "employer" as "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it." 37 TEX. ADMIN. CODE § 4.11(a); 49 C.F.R. § 390.5. Although the FMCSR also defines "motor carrier," Texas uses the definition of motor carrier provided in section 643.001(6) of the Texas Transportation Code.[1] 37 TEX. ADMIN. CODE § 4.11(b)(1). The Texas Transportation Code defines "motor carrier" as "an individual, association, corporation, or other legal entity that *controls, operates, or directs* the operation of one or more vehicles that transport persons or cargo over a road or highway in this state." TEX. TRANSP. CODE ANN. § 643.001(6) (West 2011) (emphasis added).

Here, Gulf Coast moved for summary judgment asserting there was no evidence it was a "motor carrier" as that term is defined in § 643.001(6) of the Texas Transportation Code, and therefore, Hellen could not be its statutory employee. In response, the Castillos contended that there was some evidence that Gulf Coast was a motor carrier because it controlled, operated, or

---

[1]The FMCSR provides, "Motor carrier means a for-hire motor carrier or a private motor carrier. The term includes a motor carrier's agents, officers and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories." 49 C.F.R. § 390.5.

directed the operation of one or more vehicles that transport persons or cargo over a road or highway in this state. The Castillos produced evidence in support of their contention.

The only Texas case applying the definition of "motor carrier" found in section 643.001(6) of the Texas Transportation Code is *Martinez v. Hays Constr. Inc.*, 355 S.W.3d 170, 185 (Tex. App.—Houston [1st Dist.] 2011, no pet.). In *Martinez*, a construction company was sued for negligent hiring, negligence, and vicarious liability under the Texas Motor Carrier Safety Regulations, after a truck driver who was hauling dirt for the construction company was involved in a fatal traffic accident. *Id*. at 173. The trial court granted summary judgment in favor of the construction company, and the plaintiff appealed. The court of appeals reversed, concluding a material fact issue existed as to whether the construction company controlled, operated, or directed the operation of dump trucks used to haul dirt for an excavation project and therefore fell within the definition of "motor carrier" in section 643.001(6) of the Texas Transportation Code. *Id*. at 185.

The summary judgment evidence in *Martinez* showed the construction company had contracted with a county to perform excavation work at a particular site. *Id*. at 173. The excavation work consisted of removing dirt from the excavation site and hauling it to another site. *Id*. The construction company obtained quotes from multiple truck drivers about hauling the dirt on a per-load basis. *Id*. After the construction company and the truck drivers agreed on a cost per load, the construction company called the drivers each day and requested their services based on the amount of dirt that needed to be removed from the excavation site. *Id*. When the truck drivers arrived at the excavation site to pick up a load, construction company employees would check their drivers' licenses and proof of insurance. *Id*. at 174. Construction company employees would then load the dump trucks at the excavation site. *Id*. The truck drivers had no control over

how much dirt was loaded in their trucks, and could not request removal of the dirt if they felt the truck was overloaded. *Id*. The truck drivers would then deliver the dirt to the drop-off site. *Id*. At the drop-off site, the truck drivers were given a receipt for each load delivered, and were ultimately paid based on the number of receipts they obtained. *Id*. The construction company also provided hauling permits for the truck drivers. *Id*. After viewing the evidence in the light most favorable to the non-movant, the First Court of Appeals concluded that the evidence in *Martinez* raised a material fact issue as to whether the construction company fell within the definition of motor carrier provided in section 643.001(6) of the Texas Transportation Code. *Id*. at 185.

Here, the Castillos maintain they presented evidence raising a genuine issue of material fact as to whether Gulf Coast controlled, operated, or directed Hellen's work. To raise a genuine issue of material fact as to whether Gulf Coast was a motor carrier, the Castillos had to produce more than a scintilla of evidence that Gulf Coast controlled, operated, or directed the operation of the tractor trailer driven by Hellen. *See* TEX. TRANSP. CODE ANN. § 643.001(6) (West 2011) (emphasis added). A no-evidence summary judgment motion is properly granted when the respondent fails to bring forth more than a scintilla of probative evidence that raises a genuine issue of material fact. *See Sanchez v. Mulvaney*, 274 S.W.3d 708, 711 (Tex. App.—San Antonio 2008, no pet.); TEX. R. CIV. P. 166a(i). More than a scintilla exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Sanchez*, 274 S.W.3d at 711. Less than a scintilla exists if the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Id*.

The Castillos produced three relevant pieces of evidence. First, the Castillos produced the deposition testimony of Gulf Coast's managing owner, David Shelton. Shelton acknowledged in

his deposition that Gulf Coast's website stated it had "hauling available." Shelton explained this meant that Gulf Coast could find a truck and a trucker to transport a customer's livestock to its facility. Shelton testified that ninety percent of the livestock sold by Gulf Coast was transported by the owners themselves; Gulf Coast arranged hauling for about ten percent of the livestock it sold. Shelton further testified that when a customer inquired about hauling, Gulf Coast would identify a trucker to transport the livestock, and would contact the trucker. According to Shelton, Gulf Coast would tell the trucker how many heads of livestock were involved and where they were located. Shelton further testified the trucker, not Gulf Coast, was responsible for his truck. When the trucker arrived at the auction barn, Gulf Coast employees would unload the livestock from the trailers. According to Shelton, Gulf Coast was responsible for the livestock as it stepped onto its property; however, Gulf Coast employees were instructed not to enter the delivery trucks.

Second, the Castillos produced the deposition testimony of Gulf Coast's assistant manager and yard foreman, Richard Shimer. Shimer testified that Gulf Coast accommodates its customers in a variety of ways, including assisting those customers who are unable to bring livestock to its auction barn on their own. Shimer stated he owned a truck and trailer and, if a customer needed help transporting a small load of livestock to the auction barn, he would haul the livestock himself. Shimer stated that if he hauled livestock for a customer in his truck he would either be paid on the spot, or he would receive a check from Gulf Coast. Shimer explained this fee was not part of his salary from Gulf Coast, but was paid out of the seller's fee. Shimer further stated Gulf Coast did not have a list of truckers it called when a client expressed a need for hauling.

Third, the Castillos produced a sign that was posted near the accident site stating, "Loading and unloading of livestock is to be done by employees only."

The Castillos contend their case is similar to the situation presented in *Martinez*, where the First Court concluded that a material fact issue existed as to whether the construction company was a motor carrier under the definition provided in section 643.001(6) of the Texas Transportation Code. *Id*. at 185. We disagree. The present case is distinguishable from *Martinez*. In *Martinez*, the evidence showed the construction company was ultimately responsible for hauling dirt from the construction project. *Id*. Additionally, the construction company obtained hauling permits and determined the ultimate location for transporting and unloading the dirt; the construction company's employees actually loaded each dump truck, checked each driver's license and proof of insurance, and informed each driver where to take the dirt; and the construction company indirectly paid the drivers on a per-load basis. *Id.*

Here, by contrast, Gulf Coast exercised no control over the drivers and the trucks. Gulf Coast contacted drivers on an as-needed basis to accommodate a small percentage of its customers. Gulf Coast's employees did not perform the loading, nor did Gulf Coast direct the size of the load at the pick-up site. Gulf Coast did not direct the route to be taken by the drivers, nor did it exercise any other control over the trucks or the drivers as they transported the livestock to Gulf Coast's auction barn. Although Gulf Coast's employees unloaded the livestock on Gulf Coast's premises, this was done only after the truck was parked in the unloading area. In fact, the evidence showed that Gulf Coast employees were expressly instructed not to enter the trucks delivering livestock, and to begin unloading only after the truck was parked in the designated unloading area. Finally, the sign on Gulf Coast's property stating, "Loading and unloading of livestock is to be done by employees only," was not specific to drivers hauling

livestock on behalf of a third party. The sign applied to all of the drivers delivering livestock to the auction barn.

We conclude the Castillos failed to bring forth more than a scintilla of evidence that Gulf Coast controlled, operated, or directed the operation of one or more vehicles that transport persons or cargo over a road or highway in this state. *See* TEX. TRANSP. CODE ANN. § 643.001(6); *see also Alaubali v. Rite Aid Corp.*, 320 F. App'x 765, 767-68 (9th Cir. 2008) (concluding the defendant was not acting as a motor carrier when it hired a third party to provide transportation services, and the third party controlled the execution of those services). Absent such evidence, Gulf Coast was not a motor carrier, and could not be vicariously liable for Hellen's negligent conduct. We, therefore, conclude the trial court did not err in granting summary judgment on the Castillos' negligence claim.

## NEGLIGENT HIRING CLAIM

Next, the Castillos argue the trial court erred in granting summary judgment as to their negligent hiring claim. The Texas Supreme Court has "not ruled definitively on the existence, elements, and scope" of negligent hiring claims. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n. 27 (Tex. 2010). However, Texas appellate courts have ruled that a negligent hiring claim is a simple negligence cause of action based on an employer's direct negligence. *Morris*, 78 S.W.3d at 49; *Castillo v. Gared, Inc.*, 1 S.W.3d 781, 786 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *see Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 97 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *Doege v. Sid Peterson Mem'l Hosp.*, No. 04-04-00570-CV, 2005 WL 1521193, at *7 (Tex. App.—San Antonio 2005, pet. denied); *Malone v. Ellis Timber, Inc.*, 990 S.W.2d 933, 936 (Tex. App.—Beaumont 1999, no pet.). To prevail on a simple negligence action, the plaintiff must prove (1) a legal duty, (2) a breach of that duty by the defendant, and

(3) damages proximately caused by the breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *see Doege*, 2005 WL 1521193, at *7. The basis of responsibility for negligent hiring is the employer's own negligence in hiring an incompetent individual whom the employer knows, or by the exercise of reasonable care, should have known to be incompetent or unfit, thereby creating an unreasonable risk of harm to others. *Donaldson v. J.D. Transp. Co., Inc.*, No. 04-04-00607-CV, 2005 WL 1458230, at *2 (Tex. App.—San Antonio 2005, no pet.).

Generally, there is no duty to control the conduct of third persons unless a special relationship exists between the actor and the third person that imposes a duty upon the actor to control the third person's conduct. *Triplex Commc'n, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995); *Verinakis*, 987 S.W.2d at 97. Special relationships giving rise to such a duty include the relationship between employer and employee, and independent contractor and contractee, provided the contractee retains the right to control the contractor's work. *Phillips*, 801 S.W.2d at 525; *Verinakis*, 987 S.W.2d at 97.

"To raise a genuine issue of material fact . . . the evidence must transcend mere suspicion." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, no evidence. *Id.* (citing *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

In its second summary judgment motion, which invoked both the traditional and no-evidence standards, Gulf Coast asserted it was entitled to summary judgment on the Castillos' negligent hiring claim because (1) it had no duty to control Hellen's conduct because it did not hire Hellen; and (2) there was no evidence it hired Hellen. If the Castillos failed to produce more than a scintilla of evidence under the no-evidence standard, there is no need to determine

whether Gulf Coast's summary judgment proof satisfied the traditional summary judgment standard. *See id.* at 600; TEX. R. CIV. P. 166a(c).

To support their contention that they produced evidence raising a material fact issue as to whether Gulf Coast hired Hellen on the day of the accident, the Castillos point to Gulf Coast's bookkeeping records and Hellen's deposition testimony. The bookkeeping records, which consist of four pages titled, "Account Quick Report," cover the years 2008 to 2011. Each page lists by date, check number, and amount, checks paid to Hellen. The first page lists a payment of $55.00 on August 6, 2008, for "SALE 08/05/…" and a payment of $300.00 on August 11, 2008, for "SALE 08/05/…" However, the summary judgment evidence established that the checks Gulf Coast issued to Hellen were paid out of the sale proceeds due to the livestock owner. This evidence was uncontroverted. Therefore, under the circumstances presented in this case, the bookkeeping records showing checks payable to Hellen did not constitute evidence that Gulf Coast hired Hellen as a contractor on the day of the accident.

Hellen's deposition testimony was as follows:

Q: Do me a favor and explain to me, please, how you're notified from Gulf Coast [Livestock Market, LLC] that there's livestock that they want you to pick up and deliver to them.

A: Well, I'll get a call that they have a load for me to—to the sale barn, and I'll just go pick them up. I'll get a phone call from *either Dick Shimer or David [Shelton] or Freddy Moore* that receives the cattle.

***

Q: Okay. So essentially what would happen when Gulf Coast would have a load for you to transport is they would contact you, David Shelton or Dick Shimer or Freddy Moore would call you and say, Mr. Hellen we want you to pick up some livestock? Is that pretty much how it would go?

A: Yes, sir.

Q: And you would say something like, where do you want me—

A:     I'll get—

Q:     —to pick it up?

A:     I'll get them there. I already know where to pick them up and where to go.

Q:     Okay. Is that what happened for the load that you were delivering on August 5, 2008?

A:     Had to be.

(emphasis added). The summary judgment evidence in this case showed that Shimer and Shelton were representatives of Gulf Coast; and Moore, who operated a separate business called Hebbronville Pens, was not a representative of Gulf Coast.

Contrary to the representations made in the Castillos' brief, Hellen did not testify that Gulf Coast hired him on the day of the accident. Hellen only testified that either a representative from Gulf Coast or a representative from Hebbronville Pens notified him that there was a load of cattle for him to pick up. In fact, Hellen was not directly asked who hired him. Rather, Hellen was asked how he was notified that livestock needed to be taken to Gulf Coast's auction barn. In response, Hellen indicated that it "[h]ad to be" either Shimer, Shelton, or Moore, who notified him on the day of the accident. We conclude Hellen's equivocal deposition testimony was so weak it did no more than create a mere surmise or suspicion that he was hired by Gulf Coast. *See id.* at 601; *Madisonville State Bank, N.A. v. Citizens Bank of Texas, N.A.*, 184 S.W.3d 835, 839 (Tex. App.—Beaumont 2006, no pet.) (holding testimony did not constitute more than a scintilla of evidence when it was at best equivocal).

The Castillos argue in their brief that "Gulf Coast cannot escape the reality that either it hired Hellen or it hired the entity that hired [] Hellen to transport livestock for Gulf Coast without checking the competence of either." At oral argument, the Castillos again argued it did not matter if the evidence showed that Gulf Coast hired Hellen to transport the cattle, or if the

evidence showed Gulf Coast hired Hebbronville Pens to transport the cattle. We disagree. If Hebbronville Pens hired Hellen to transport the cattle, the relationship between Hellen and Gulf Coast would be too attenuated to support a claim for negligent hiring. *See Malone*, 990 S.W.2d at 936 (concluding the relationship between the employer and the contractor was too attenuated to support a claim for negligent hiring when there was no evidence that an employer hired the contractor to transport timber to a mill).

We conclude the Castillos presented no more than a scintilla of evidence that Gulf Coast hired Hellen to transport cattle on the day of the accident. As a consequence, the Castillos failed to meet their burden of producing summary judgment evidence raising a genuine issue of material fact. We, therefore, conclude the trial court did not err in granting summary judgment on the Castillos' negligent hiring claim.

## EXCLUSION OF THE EXPERT'S AFFIDAVIT

Finally, the Castillos argue the trial court abused its discretion in excluding the affidavit of their commercial trucking and safety expert, Roger C. Allen. To obtain reversal of a judgment based on the erroneous admission or exclusion of evidence, an appellant must show that the trial court's ruling was in error, and that the error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1; *State v. Cent. Expressway Sign Assoc.*, 302 S.W.3d 866, 870 (Tex. 2009); *Doncaster v. Hernaiz*, 161 S.W.3d 594, 601 (Tex. App.—San Antonio 2005, no pet.). In other words, to successfully challenge an evidentiary ruling on appeal, an appellant must show that the judgment turns on the particular excluded evidence. *Doncaster*, 161 S.W.3d at 601.

Here, the Castillos essentially argue the exclusion of Allen's affidavit caused the rendition of an improper judgment because Allen's affidavit had a direct bearing on the proximate cause elements of their claims. Yet, we have already concluded the summary

judgment was properly granted on grounds other than the absence of evidence of proximate cause. The Castillos' argument concerning the exclusion of the expert witness's affidavit is therefore unnecessary to the disposition of this appeal. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

The trial court's judgment is affirmed.

Karen Angelini, Justice